UNITED STATES of America, Appellee,

v.

Steven Anthony PANTAZIS, Appellant.

No. 86–5273.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1986.

Filed April 15, 1987.

Scott F. Tilsen, Asst. Federal Public Defender, Minneapolis, Minn., for appellant.

John M. Lee, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before ROSS, JOHN R. GIBSON, and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Steven Anthony Pantazis appeals from his conviction for interstate travel with intent to distribute the proceeds of an unlawful activity in violation of 18 U.S.C. § 1952 and for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Pantazis argues the district court committed reversible error when it denied his motion to suppress evidence obtained from the airport seizure and later search of his shoulderbag. We affirm.

In October 1985 Pantazis made a brief trip to Miami, Florida, leaving from the Minneapolis-St. Paul International Airport. Officer Bruce Giller, an experienced airport narcotics agent, was aware of this trip and waited at the airport gate for Pantazis' return flight to Minneapolis-St. Paul. Pantazis' return flight had layovers in Orlando, Florida; Houston, Texas; and Kansas City, Missouri.

Pantazis was dressed casually and carried a shoulderbag when he deplaned. He had no other luggage. After observing Pantazis for twenty minutes, Officer Giller, who was not dressed in a police uniform, approached him in a hall area in the terminal. Officer Giller identified himself as a police officer and asked Pantazis if they could talk. Pantazis agreed. Officer Giller told Pantazis he was not under arrest and was free to leave.

In talking with Pantazis, Officer Giller first asked him where he had boarded his flight. Pantazis said Houston. Officer Giller, knowing the answer was false, then asked Pantazis about the nature of his trip. Pantazis responded that he had visited a friend in Houston for two days. Again, Officer Giller knew Pantazis' answer was false.

Officer Giller then told Pantazis he was conducting a narcotics investigation and requested that Pantazis consent to a search of his shoulderbag. Pantazis refused, and Officer Giller informed Pantazis he was seizing the bag. Officer Giller directed Pantazis to a nearby vacant counter where he prepared a receipt for the bag seized. Pantazis was not detained.

After Pantazis left the airport, his shoulderbag was placed with other bags, and a narcotics detection dog indicated the bag contained narcotics. Officer Giller obtained a search warrant, and the later search revealed approximately one hundred and ten grams of ninety-percent pure cocaine; an airline ticket for a return flight to Miami that evening; drug-related notes, names, and corresponding phone numbers; and banking records reflecting numerous,

large deposits in accounts held in St. Paul and Miami.

On appeal Pantazis argues this evidence should have been suppressed because Officer Giller violated the fourth amendment by seizing the shoulderbag without reasonable, articulable suspicion the bag contained narcotics. We disagree.

■ A law enforcement officer may briefly detain a traveler's luggage to perform a limited investigation when the facts available to the officer "lead him reasonably to believe that a traveler is carrying luggage that contains narcotics." *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *see also United States v. Wallraff*, 705 F.2d 980, 989 (8th Cir.1983). Reasonable suspicion arises from specific, articulable facts then known to the officer together with the rational inferences the officer may draw from them in light of the officer's experience. *Terry v. Ohio*, 392 U.S. 1, 21–22, 27, 88 S.Ct. 1868, 1879–80, 1883, 20 L.Ed.2d 889 (1968). Thus, we view the observations of law enforcement officers as a whole and in light of their training and experience in discerning the practices of drug couriers. *United States v. Sadosky*, 732 F.2d 1388, 1393 (8th Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984); *Wallraff*, 705 F.2d at 988. Conduct appearing innocent to an untrained observer may be significant to a narcotics agent. *Wallraff*, 705 F.2d at 988.

In reviewing the district court's determination on a motion to suppress, we will affirm unless we find the decision "lacks the support of substantial evidence, it evolves from an erroneous view of the applicable law, or upon considering the entire record we are left with a definite and firm conviction that a mistake has been made." *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985).

Before Officer Giller approached Pantazis, he was aware of the following facts. First, Pantazis had just returned from a trip to Miami, a source city for narcotics. Second, he had been in Miami only fifteen hours. Third, Pantazis paid cash for his ticket and refused to supply the airline with a local phone number. Officer Giller thought this conduct was significant because it suggested an effort to limit the information available to connect Pantazis to the Miami flight or to trace his local activities. Fourth, Pantazis made visual sweeps of the gate area when he arrived at the Minneapolis-St. Paul airport, suggesting an effort to detect surveillance. Fifth, Pantazis immediately discarded his used airline ticket when he entered the terminal. Because the ticket had Pantazis' name on it, Officer Giller believed Pantazis again may have been attempting to disassociate himself from the Miami flight. Finally, Pantazis delayed his departure from the airport for twenty minutes, a ploy used by drug couriers to discourage surveillance. In light of this information, Officer Giller became suspicious that Pantazis was carrying narcotics in his shoulderbag.

■ Pantazis argues the information known to Officer Giller was insufficient to support a reasonable suspicion of criminal activity because it could describe the conduct of many innocent travelers. *See United States v. Sokolow*, 808 F.2d 1366, 1369–72 (9th Cir.1987). Here, however, Officer Giller used his knowledge only to approach Pantazis. Officer Giller merely identified himself as a police officer and told Pantazis he was free to leave. Because the initial contact was a permissible encounter and the conversation that followed was consensual, Officer Giller's actions before he seized the bag present no fourth amendment concern. *See Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983) (plurality); *United States v. Clark*, 743 F.2d 1255, 1258 (8th Cir.1984).

■ Officer Giller seized the shoulderbag for further investigation only after Pantazis, in conversation, pointedly lied to avoid any connection between his trip and a narcotic-source city. In our view Pantazis' deceptive answers coupled with his previous suspicious actions solidified the objective basis required for Officer Giller's belief the shoulderbag contained narcotics. *See United States v. Borys*, 766 F.2d 304,

311–12 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 852, 88 L.Ed.2d 893 (1986). Thus, we conclude that reasonable suspicion existed to justify seizure of Pantazis' shoulderbag.

Accordingly, we affirm the district court.