**UNITED STATES of America, Appellee,**

v.

**Parnell RILEY, Jr., Appellant.**

**No. 89–1884.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 9, 1990.
Decided March 11, 1991.

James P. Massie, Little Rock, Ark., for appellant.

Terry L. Derden, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, MAGILL and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Parnell Riley appeals from his conviction of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841, 846 (1988), possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 (1988), aiding and abetting the possession and distribution of cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (1988), and use of a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c) (1988). Riley appeals his conviction on the ground that the district court[1] erred in denying his motion to suppress evidence seized by officers at the Little Rock, Arkansas airport. We affirm the judgment of the district court.

On May 11, 1988, Detective May of the Los Angeles Police Department observed Riley at the American Airlines ticket counter in the Los Angeles International Airport. She noticed that Riley was dressed in a brown business suit and appeared to be nervous. The fact that a businessman was leaving on a late night plane with little luggage seemed odd to the detective. Detective May also observed that Riley's suitcase, an inexpensive cloth bag fastened by an unusually large padlock, contrasted sharply with the expensive eel-skin briefcase he was carrying.

After Riley left the counter, Detective May approached the ticket agent and learned that Riley's one-way ticket had been prepaid with cash by someone in Little Rock. In Detective May's experience, prepaid tickets purchased in cash were often associated with narcotics trafficking. She told her partner, Detective Gillespie, about her suspicions and the two of them approached Riley when he came out of a rest room. They identified themselves as detectives and told him he was not under arrest, that he did not have to talk to them, and that he was free to leave. Riley appeared cooperative and agreed to talk with them. Detective Gillespie asked Riley for identification. Detective May noticed that Riley's hands were shaking as he produced his driver's license and ticket, although both items bore his true name. The detectives told him they were working narcotics, and asked him if he was carrying any drugs. Riley said no, and consented to a search of his person, briefcase and, initially, to his check-in luggage. He became increasingly nervous, however, as the discussion shifted to the check-in luggage. When it appeared that the detectives could actually retrieve the suitcase, Riley withdrew permission to search it and told them he wanted to leave immediately.

The detectives did not have a dog trained to sniff for narcotics with them, and they believed it would take at least an hour to have one brought to the airport. A one-hour delay would have prevented Riley from taking his scheduled flight to Little Rock, so the detectives allowed Riley to leave. Detective May then contacted Detective Dee Gray of the Little Rock Police Department and informed Gray of her observations and the suspicion they aroused. Detective Gray testified at the suppression hearing that prior to May's call, she had received unverified information from an informant that Riley was involved in cocaine trafficking in the Little Rock area. Detective Gray testified that she had planned to attempt undercover buys from him, although the district court made no findings of fact in this respect.

Following up on Detective May's telephone call, Little Rock police officers went to the airport with a drug sniffing dog and prepared to test Riley's luggage when it

---

1. The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

arrived. One of the officers watched Riley deplane and followed him to a pay phone near the baggage claim area. The observing officer then joined the others behind the baggage claim area and helped them locate Riley's suitcase. The dog alerted to Riley's suitcase, after which the police placed the suitcase on the conveyor belt that was taking the other luggage to the public area. This process took no more than seven minutes. When the officers returned Riley's suitcase to the conveyor, baggage handlers were still unloading luggage from Riley's flight so that the dog sniff caused no delay to Riley or the other passengers.

Riley did not wait at the airport for his luggage. After making a phone call, he left the airport and a second man, Tim Moore,[2] collected Riley's suitcase from the baggage claim area. Officers approached Moore, identified themselves and asked if he owned the suitcase. Moore denied knowing who owned the suitcase, willingly relinquished it to the officers and left the airport. The officers obtained a search warrant and, on searching the suitcase, found 250 grams of cocaine.[3] When the government introduced the cocaine as evidence against Riley in his criminal trial, he moved to suppress the evidence as the fruit of an illegal seizure.

On appeal, Riley challenges the district court's denial of his motion to suppress on two primary grounds. First, he argues that under the fourth amendment the Little Rock officers needed probable cause, not a reasonable suspicion, before they could detain his suitcase and subject it to a dog sniff. Riley next argues that even if the police needed only a reasonable suspicion to test his suitcase, the Little Rock officers did not know sufficient articulable facts to support a reasonable suspicion that would enable them to detain and subject his suitcase to a dog sniff.

We will affirm the district court's denial of Riley's motion to suppress unless we find that the decision is not supported by substantial evidence, the decision is based on an erroneous view of applicable law, or after considering the record as a whole " 'we are left with a definite and firm conviction that a mistake has been made.' " *United States v. Pantazis*, 816 F.2d 361, 363 (8th Cir.1987) (quoting *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985)).

## I.

■ We turn first to Riley's argument that the Little Rock officers needed probable cause before they could separate his suitcase from the others and subject it to a dog sniff. At the suppression hearing, the Little Rock police conceded that they did not have probable cause when they first detained Riley's suitcase. The government contends that the officers needed only a reasonable suspicion to subject the suitcase to a dog sniff.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). "In the ordinary case, the [Supreme] Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the item to be seized." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). Despite this general rule, the Supreme Court decided, in *Place*, that sometimes the seizure of a traveller's suitcase can be justified by a "reasonable, articulable suspicion, premised on objective facts, that the luggage contains contraband or evidence of a crime." 462 U.S. at 702, 103 S.Ct. at 2642. In *Place*, the Court announced a balancing test for determining when a police seizure can be

---

2. This court affirmed Moore's conviction of possession with intent to distribute cocaine in *United States v. Moore*, 911 F.2d 140 (8th Cir.1990).

3. The discovery of cocaine prompted the police to begin an investigation, and on August 5, 1988, officers arrested both Riley and Moore following a drug-related shooting in Little Rock.

supported by less than probable cause, stating:

We must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause.

*Id.* at 703, 103 S.Ct. at 2642.

Applying the *Place* balancing test, the detention of Riley's suitcase did not require probable cause. It was minimally intrusive, and may not have been a seizure at all.[4] The detention lasted less than seven minutes. It took place in a private area, outside of public view, and while the suitcase was in the possession of a third party common carrier. The officers did not open or disturb the contents of the suitcase in any way. This case fits clearly within the unique category of situations described in *Place*[5] where, because the intrusion is so minimal, the detention can be supported by articulable facts which raise a reasonable suspicion.

## II.

■ Riley begins his second argument by asserting that before an officer can form a reasonable suspicion, he or she must make personal objective observations which form the basis of that reasonable suspicion. The Little Rock officers who

---

**4.** The issue has not been raised by the government, but we feel it appropriate to observe that *Place* may well support the proposition that exposing Riley's checked baggage to a trained sniffing dog may be no seizure at all. *See United States v. Germosen–Garcia,* 712 F.Supp. 862, 866–71 (D.Kan.1989) (no "seizure" when police dog sniffed luggage still in possession of third party common carrier and the procedure caused no significant delay to the suspect's travel). While the language in *Place* so stating has been considered dictum, *Place,* 462 U.S. at 710–11, 103 S.Ct. at 2646 (Brennan and Marshall, JJ., concurring); *Id.* at 720–21, 103 S.Ct. at 2651–52 (Blackmun and Marshall, JJ., concurring); 1 LaFave *Search and Seizure,* § 2.2(f), pp. 369–71 (2d ed. 1987), the Supreme Court relied on *Place* to hold that a field test of white powder coming from a package in possession of a Federal Express office was a de minimis infringement of a possessory interest and was constitutionally reasonable. *Jacobsen,* 466 U.S. at 126, 104 S.Ct. at 1663. Indeed, the Ninth Circuit, in *United States v. Beale,* 736 F.2d 1289 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), after remand for reconsideration in light of *Place* and *Jacobsen,* held that the sniff of luggage by a dog in the checked baggage area was not a search or seizure within the meaning of the fourth amendment. *Beale,* 736 F.2d at 1292. As the issue was not raised by the government, however, we are guided by Justice Blackmun's reasoning in *Place* that this court "should not decide an issue on which neither party has expressed any opinion at all." 462 U.S. at 723, 103 S.Ct. at 2653 (Blackmun and Marshall, JJ., concurring).

**5.** The Supreme Court, in *Place,* stated:

A "canine sniff" by a well-trained narcotics detection dog, however, does not require

opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is *sui generis.* We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure.

462 U.S. at 707, 103 S.Ct. at 2644–45 (emphasis in original).

Likewise, *Beale* stated:

Here, we are not confronted with a case in which the detection dog conducted a sniff of a person rather than an inanimate object, or a sniff of luggage that a person was carrying at the time. The investigative technique applied to Beale's luggage caused [sic] "virtually no annoyance and rarely even contact with the owner of the bags, unless the [test result] is positive." *United States v. Waltzer,* 682 F.2d 370, 373 (2d Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). There is no evidence that Beale himself was detained, even for a moment, due to the sniff. 736 F.2d at 1291–92 (footnotes omitted).

detained Riley's suitcase made no personal observations that could form the basis of a reasonable suspicion. Instead, they relied entirely on the information they received from the detectives in Los Angeles.[6] Riley claims that without any corroborating personal observations, the officers could not form the requisite reasonable suspicion to detain and subject the suitcase to a dog sniff.

Riley cites no authority to support his view, and we are convinced that we should place no such restriction on law enforcement agencies. Our cases are replete with situations in which one officer furnishes information to another, and while this frequently involves two officers from the same police force, it may also involve an officer in one locality communicating with one in another. In an era when individuals can fly thousands of miles in a matter of hours, we should not place undue restrictions on the ability of officers in one city to pass vital information on to officers in another city. An individual arousing suspicion as he or she departs on an airplane should not find it surprising that those suspicions can be transmitted to officers in the destination city.

We dealt with a somewhat similar situation in *United States v. O'Connell,* 841 F.2d 1408 (8th Cir.), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988). That case involved an officer who stopped a car and detained its occupants although he was not personally aware of the significance of the specific make of car, or able to identify the driver. *Id.* at 1418. Other officers on the investigation team knew about the significance of the make of car and also were able to identify the driver as a suspect in their criminal investigation. *Id.* The appellant in *O'Connell* argued that the officer who stopped and detained the automobile violated the appellant's fourth amendment rights because that officer did not have sufficient personal knowledge to constitute probable cause or reasonable suspicion. *Id.* at 1418–19. We

rejected that argument, holding that "we presume that the officers have shared relevant knowledge which informs the decision to seize evidence or to detain a particular person, even if the acting officer is unable to completely and correctly articulate the grounds for his suspicion at the time of the search." *Id.* at 1419 (citing *United States v. Wright,* 641 F.2d 602, 606 (8th Cir.), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *White v. United States,* 448 F.2d 250, 254 (8th Cir.1971), *cert. denied,* 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972)).

In the present case the Los Angeles detectives passed the information about Riley on to Little Rock before the Little Rock officers took any action. Just as the officer in *O'Connell* could act on the collective knowledge of the other officers from the investigation team to find the probable cause required for his action, the Little Rock officers were able to rely on the observations of the Los Angeles detectives to form the reasonable suspicion needed to subject Riley's suitcase to a dog sniff. Although not essential to our decision, we find it significant that the Little Rock officers also had an unsubstantiated informant's tip linking Riley to narcotics traffic in the Little Rock area. While this was not mentioned in the district court's order, it is an additional factor in the totality of circumstances that justified the brief detention of Riley's suitcase. *See United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981).

■ Riley also claims that even if the Little Rock officers were allowed to rely on the observations of the Los Angeles detectives, those observations do not raise a reasonable suspicion that Riley's suitcase contained contraband.

The facts the Little Rock officers learned from Los Angeles were that: Riley was flying from Los Angeles, a known source city; Riley was dressed in business attire while flying on the late night flight; Ri-

---

6. At the suppression hearing, Little Rock officer Barnett testified that he decided to sniff test Riley's luggage when it arrived at the airport based solely on the information relayed to him from Los Angeles. According to Barnett, his observations at the airport had absolutely no significance in his decision to have the dog sniff Riley's suitcase.

ley's luggage was not consistent with his statement to the detectives that he had been in Los Angeles for several days; Riley surveyed the airport nervously while picking up his ticket from the airline ticket counter; Riley's one way ticket was prepaid in cash by someone in Little Rock, which was unusual in light of his statement that he had been visiting relatives; Riley's dress and appearance did not match the style of his checked luggage; Riley's suitcase was fastened with an unusually large padlock; Riley displayed nervousness when he produced his driver's license despite the fact that the name on his license corresponded with the name on his ticket; and Riley exhibited a sharp change in attitude, from being compliant and agreeable at the outset of his encounter with the detectives to becoming nervous and guarded when they pressed for permission to search his checked suitcase.

Riley attempts to diminish the significance of these factors by pointing out that each factor, when considered alone, can readily be explained and does not suggest that he was carrying drugs. We do not consider the strength of each separate factor. Instead, when evaluating whether officers possessed the requisite reasonable suspicion, a court must consider "the totality of the circumstances—the whole picture." *Cortez,* 449 U.S. at 417, 101 S.Ct. at 695. "[W]e view the observations of law enforcement officers as a whole and in light of their training and experience in discerning the practices of drug couriers." *Pantazis,* 816 F.2d at 363; *see also United States v. Sadosky,* 732 F.2d 1388, 1393 (8th Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984). This evaluation is often difficult because the basis for a reasonable suspicion may involve " 'a series of acts, each of them perhaps innocent' " if viewed separately, " 'but which taken together warrant[ ] further investigation.' " *United States v. Sokolow,* 490 U.S. 1, 9–10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). "Conduct appearing innocent to an untrained observer may be significant to a narcotics agent." *Pantazis,* 816 F.2d at 363.

The Los Angeles detectives each had considerable experience detecting illegal narcotics activity. Detective May had 13–½ years and Detective Gillespie, 19–½ years of police experience, and both had worked extensively in the Los Angeles airport monitoring drug activity. In light of the experience of the observing detectives, and when considering the totality of the circumstances which they observed, Detectives May and Gillespie had a reasonable suspicion based on articulable objective facts which, when communicated to the officers in Little Rock, provided sufficient justification for the minimal intrusion caused by subjecting Riley's suitcase to a dog sniff test. We find no error in the district court's decision to deny Riley's motion to suppress.

During the pendency of the appeal, Riley moved to dismiss his appointed counsel as inadequate. We denied this motion and feel it appropriate to state here that defense counsel carefully analyzed the technical airport search issues involved in this case and briefed the case in a thoroughly competent manner.

We affirm the judgment of the district court.