**UNITED STATES of America, Appellee,**

v.

**Melissa Ann HARVEY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Lisa Marie FLAGELLA, Appellant.**

**Nos. 91–2773, 91–2922.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 10, 1991.

Decided April 16, 1992.

Philip Friedman, Erie, Pa., argued, for appellants.

Sandra Wilson Cherry, Asst. U.S. Atty., Little Rock, Ark., argued, for appellee.

Before LAY,* Chief Judge, WOLLMAN, Circuit Judge, and HANSEN Circuit Judge.

PER CURIAM.

Melissa Ann Harvey and Lisa Marie Flagella appeal from the district court's denial of their motions to suppress evidence. We affirm.

## I.

Harvey and Flagella were travelling across the country on a Greyhound bus.

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

When the bus stopped at the North Little Rock, Arkansas, Greyhound bus station for cleaning and refueling, the passengers were told that they could exit the bus. Harvey and Flagella and other passengers did so.

Two Little Rock police detectives were monitoring the bus station for illegal narcotics smuggling. Along with a narcotics-sniffing dog, named Jupp, they inspected the baggage area in the underbelly of the bus and found no narcotics. The detectives and Jupp then boarded the bus. According to one of the detectives, as Jupp was walking down the aisle he lifted "his head and ... sniff[ed] high" indicating "that the odor of narcotics [was] above his head level." At that point, the detectives opened some of the doors to the overhead baggage area, removed some of the bags, placed them at Jupp's level, and allowed Jupp to sniff them. Jupp "alerted" to two bags. The detectives then returned all of the bags to the overhead storage area and exited the bus.

The overhead baggage area was described as similar to those found on airplanes. Unlike airplanes, however, the baggage area is not compartmentalized; there are no inner walls dividing the baggage area into individual compartments. Thus, the overhead area is really one large compartment, with individual doors above the seats. These doors cannot be locked to the exclusion of other passengers.

Harvey, Flagella, and the other passengers then returned to their seats on the bus. Before the bus departed, the detectives re-boarded, retrieved one of the bags to which Jupp had alerted, and asked the owner to identify himself. Flagella admitted that it was her suitcase, whereupon the detectives asked her to take it and wait outside the bus. The detectives repeated the procedure with the second bag, which was claimed by Harvey.

Once off the bus, the detective asked for and received permission from Flagella to search her bag. As the detective reached

for her suitcase, however, Harvey intervened and requested that the detectives first obtain a search warrant. Flagella agreed. The women were subsequently advised of their rights and transported to the police station.

Once at the police station, appellants were placed in an interview room and informed that a search warrant would be obtained. After waiting a short time, appellants consented to a search of their bags. Uneasy with this change in attitude, the officers asked their superior officer to enter the room and he did so. After being read their rights once again, both appellants consented to a search of their bags so that, in their words, they "could get out of the room." The officers searched the bags and discovered that each bag contained approximately five pounds of marijuana.

Harvey and Flagella moved to suppress the marijuana on the ground that it was obtained in violation of their Fourth Amendment rights. The district court [1] denied these motions, and Harvey and Flagella entered conditional pleas of guilty, subject to their right to appeal the denial of the motions to suppress. Fed.R.Crim.P. 11(a)(2).

## II.

Appellants first argue that a dog sniff is a search and that some degree of individualized suspicion is required to satisfy the requirements of the Fourth Amendment. We disagree.

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (citations omitted). In *United States v. Place*, 462 U.S. 696, 103

---

1. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court stated that:

> [T]he canine sniff is *sui generis.* We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

*Id.* at 707, 103 S.Ct. at 2644. Appellants contend that this language is mere dictum and thus has no bearing on the resolution of their appeal.

"Whether or not the statement in *Place* was a holding or dictum, the Supreme Court has clearly directed the lower courts to follow its pronouncement." *United States v. Beale,* 736 F.2d 1289, 1291 (9th Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). In *Jacobsen,* 466 U.S. at 123, 104 S.Ct. at 1661, the Court clearly treated the language in *Place* as a holding: "the [*Place*] Court held that subjecting luggage to a 'sniff test' by a trained narcotics detection dog was not a 'search' within the meaning of the Fourth Amendment."

> The essence of the Supreme Court's expositions in *Place* and *Jacobsen,* which we apply here, is that the investigative technique employed here is not considered to be a "search" since (1) it discloses only the presence or absence of a contraband item, and (2) its use "ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods."

*Beale,* 736 F.2d at 1291 (*quoting Place,* 462 U.S. at 707, 103 S.Ct. at 2644).

We conclude that Jupp's sniff did not constitute a search and thus did not implicate the Fourth Amendment. First, the canine sniff intruded upon no legitimate privacy interest because it could reveal nothing about noncontraband items. *Jacobsen,* 466 U.S. at 123–24, 104 S.Ct. at 1662. Second, the canine sniff did not require any contact with the owners of the unattended baggage.[2] The canine sniff did not cause the appellants to be detained or inconvenienced, and there is no evidence that it caused any annoyance or embarrassment. *Beale,* 736 F.2d at 1291–92 (citations omitted). Third, defendants have no reasonable expectation of privacy in the ambient air surrounding their luggage, and that is all that Jupp invaded.

Appellants next argue that even if the canine sniff is not a search, the initial removal of their bags from the overhead baggage area, constituted a seizure. We disagree.

In *Jacobsen,* the court defined seizures of property as "some meaningful interference with an individual's possessory interests in that property." 466 U.S. at 113, 104 S.Ct. at 1656.

> [This] definition follows from our oft-repeated definition of the "seizure" of a person within the meaning of the Fourth Amendment—meaningful interference, however brief, with an individual's freedom of movement.

*Id.* at n. 5.

We first point out that when Jupp stopped and "air sniffed" while moving down the aisle, the detectives had a reasonable suspicion that contraband existed in the overhead baggage area. We further note that we are not here confronted with a situation where the defendants' baggage was taken directly from their custody to facilitate the canine sniff test. *See Place,* 462 U.S. 696, 699, 103 S.Ct. 2637, 2640. Rather, appellants' baggage was moved from one public area, the overhead baggage area, to another, the aisle. Appel-

---

2. Here, as in *Beale* and *United States v. Colyer,* 878 F.2d 469 (D.C.Cir.1989), "we are not confronted with a case in which the detection dog conducted a sniff of a person rather than an inanimate object, or a sniff of luggage that a person was carrying at the time." *Beale,* 736 F.2d at 1291 (footnotes omitted).

lants had left their baggage unattended, and the temporary removal of the bags caused no delay to appellants' travel. *See United States v. Lovell,* 849 F.2d 910, 916 (5th Cir.1988) (no seizure occurred when DEA agents removed bags from conveyor belt); *see also United States v. Riley,* 927 F.2d 1045, 1048 n. 4 (8th Cir.1991) (dictum) (court suggests exposing "checked baggage to a trained sniffing dog may be no seizure at all"). Indeed, appellants do not suggest that they were aware that the canine sniff was taking place, nor that their travel would have been interrupted had Jupp not detected the contraband. *See generally, United States v. Germosen–Garcia,* 712 F.Supp. 862, 866–71 (D.Kan. 1989) (thorough review of Fourth Amendment doctrine as it relates to canine sniff tests). In short, because there was no meaningful interference with appellants' possessory interests in their baggage, we hold that no seizure occurred.

The dissent suggests that physically removing the baggage from the overhead compartment and placing it in the aisle in order to facilitate the canine sniff test was in fact a "search" that must rest upon probable cause. *See Arizona v. Hicks,* 480 U.S. 321, 324–25, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987) (moving of the equipment was a "search" separate and apart from the search that was the lawful objective of entering the apartment under exigent circumstances and thus required probable cause to invoke the "plain view" doctrine). We disagree.

First, *Hicks* is distinguishable from the facts in our case. Here, the removal of the baggage from the overhead compartment was completely related to the lawful purpose for which the detective boarded the bus. After boarding the bus and seeing Jupp "alert," the detective clearly had reasonable suspicion to conclude that narcotics were located somewhere in the overhead compartment. Passengers have no objective, reasonable expectation that their baggage will never be moved once placed in an overhead compartment. It is not uncommon for the bus driver or a fellow passenger to rearrange the baggage in the overhead compartment or to temporarily re-

move the baggage and place it in a seat or in the aisle in order to rearrange and maximize the use of limited compartment space. Unlike *Hicks,* here the movement of the unattended luggage revealed nothing of independent evidentiary value, while in *Hicks* the movement of the stereo set revealed its serial number to the searching officer who later used the number to tie the component to its theft.

Second, postal authorities acting upon reasonable suspicion have been permitted to physically seize and remove items in the mail that are believed to contain narcotics and subject the items to canine drug sniffs. *See United States v. Aldaz,* 921 F.2d 227 (9th Cir.1990) (postal authorities who had reasonable and articulable suspicion that the defendant was using the mail for drug trafficking permitted to physically remove and detain the packages and subject them to canine drug sniffs); *United States v. Lux,* 905 F.2d 1379 (10th Cir.1990) (authorities permitted to seize and remove an "Express Mail" package for the purpose of a canine drug sniff when the authorities were acting upon reasonable suspicion of criminal activity). We see no meaningful distinction between these mail cases and our situation; in fact, the temporary removal of the luggage by the detective was even less intrusive to the defendants in this case.

The orders denying the motions to suppress are affirmed.

LAY, Chief Judge, dissenting.

I respectfully dissent. I find the majority's failure to find an illegal search and seizure directly contrary to *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). The Court in *Hicks* held that an illegal search occurred when police officers, who had entered an apartment under the exigent circumstances of a recent shooting, conducted an additional search unrelated to that exigency. While in the apartment, the officers noticed two sets of expensive stereo components along with weapons and a stocking cap mask. Suspecting the stereo components were stolen, an officer moved some of the com-

ponents in order to secure their serial numbers. When it was later determined that some of the serial numbers matched those on the stereo equipment taken in an armed robbery, a warrant was obtained and executed to seize the equipment.

The Court found that the search exceeded the scope of the plain view doctrine[1] because view of the components themselves did not reveal that they were stolen. Although the court found that the mere recording of the serial numbers did not constitute a seizure or meaningfully interfere with the respondent's possessory interests, it nevertheless held that the *moving* of the equipment without probable cause did "constitute a 'search' separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment." 480 U.S. at 324–25, 107 S.Ct. at 1152. On behalf of the Court, Justice Scalia reasoned:

> [T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry. This is why ... the "distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches" is much more than trivial for purposes of the Fourth Amendment. It matters not that the search uncovered nothing of any great personal value to respondent—serial numbers rather than (what might conceivably have been hidden behind or under the equipment) letters or photographs. A search is a search, even if it happens to disclose nothing but the bottom of a turntable.

480 U.S. at 325, 107 S.Ct. at 1152–53.

There is no question that the officers in the present case had the right to board the bus to question passengers. *See Florida*

*v. Bostick,* — U.S. —, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). At the time the canine, Jupp, identified the odor of narcotics supposedly emanating from the overhead baggage compartments, however, the officers had no knowledge as to which bags might contain narcotics. As the majority describes, the baggage was in an enclosed overhead baggage area which, although not compartmentalized, did contain individual doors above the passenger seats. At best, the officers had a generalized suspicion that *perhaps* one or more of the travelers' bags might contain narcotics. They did not have even a reasonable suspicion to believe a particular bag contained narcotics. Because Jupp could not "alert" to any particular bag, the officers proceeded to open the closed overhead luggage compartment doors and remove pieces of luggage for Jupp's inspection. After Jupp alerted to two suitcases belonging to the two defendants, an officer put the luggage back into the overhead compartment and left the bus.

My main disagreement with the majority is as to its conclusion that the defendants had no reasonable expectation of privacy in the luggage they placed in the overhead compartment. Based on its conclusion that the overhead compartment is a "public area," the majority reasons that the temporary removal of the defendants' bags could not have been a search or a seizure. I respectfully disagree. Under the totality of facts in the present case, I respectfully submit that an unauthorized search and seizure occurred.[2]

The majority urges that no seizure occurred because the bags were left unattended in a public area. The cases cited by the majority, however, are not on point. *See United States v. Riley,* 927 F.2d 1045 (8th Cir.1991); *United States v. Lovell,* 849 F.2d 910 (5th Cir.1988). Those cases held that no seizure occurs when bags in the custody of a third party common carrier

---

1. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

2. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs

when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (footnote omitted).

are briefly detained and subjected to a canine sniff test. *Riley* and *Lovell* are readily distinguishable. In the present case, the defendants *declined* to check their personal luggage with a third party, the bus company, preferring instead to place their effects in the more private and accessible compartments above their seats on the bus.

The majority's reliance upon *United States v. Aldaz*, 921 F.2d 227 (9th Cir. 1990), and *United States v. Lux*, 905 F.2d 1379 (10th Cir.1990), is similarly misplaced. In those cases, authorities were permitted to seize and detain packages being transported by a third party, the United States Postal Service, upon a finding that the authorities had "*a reasonable and articulable suspicion of criminal activity.*" *Aldaz*, 921 F.2d at 229 (emphasis added); *see also Lux*, 905 F.2d at 1382. In the present case the defendants neither relinquished their bags to a third party, which might have diminished their reasonable expectation of privacy, nor did they act in a manner which could have aroused the reasonable suspicions of the officers. I must strongly disagree with the majority's statement that there is "no meaningful distinction between these mail cases and our situation...." Maj. op. at 1364. In placing their bags in the enclosed overhead compartment while they briefly left the bus at a refueling stop, the defendants had every reasonable expectation that no one would displace or disturb their bags without their consent.[3] In any event, the reasonable expectation that a bus driver or fellow passengers might readjust baggage so as to accommodate other luggage is far removed from the expectation that the police would remove the bag to facilitate a search for drugs.

The majority also suggests that by leaving their belongings unattended, the defendants relinquished their expectation of privacy in the luggage. I again must disagree. There was clearly no abandonment by these young women when they temporarily placed their luggage in the enclosed compartment above their seats on the bus. *See United States v. Most*, 876 F.2d 191 (D.C.Cir.1989) (Wald, C.J.). In *Most*, the defendant left a plastic shopping bag in the care of a grocery store clerk. Even though the defendant had left the store when the officer searched the bag, the court found that there had been no abandonment and upheld the defendant's reasonable expectation of privacy. Here, the officers could not possibly have believed that the defendants did not intend to return to the bus after the brief refueling stop.

There should be little question under *Hicks* that a search occurred when the officers removed the baggage from the overhead compartment to the aisle to "facilitate the canine sniff test." The majority reasons that the "defendants have no reasonable expectation of privacy in the ambient air surrounding their luggage ... [which] Jupp invaded." Maj. op. at 1363. This misses the point. Whether a search and seizure occurs depends on the totality of circumstances. Here, the majority reasons only an unobtrusive "sniff" took place "of the ambient air" surrounding the defendants' luggage. This overlooks the preceding *seizure* of the luggage from the privacy of the overhead compartment in which the luggage rested. This seizure was executed without permission, without reasonable suspicion and without probable cause. It was done to facilitate the incriminating sniff by Jupp. I respectfully submit these overall facts amounted to unauthorized search and seizure. The circumstances are tantamount to the seizure of the conversation obtained by an illegal wiretap in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). As the Court in *Katz* stated, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the

---

**3.** The Court in *Jacobsen* reaffirmed the principle that an individual retains a legitimate expectation of privacy in personal effects while in transit. 466 U.S. at 114, 104 S.Ct. at 1657.

public, may be constitutionally protected." 389 U.S. at 351–52, 88 S.Ct. at 511.[4]

Here the majority emphasizes that a canine sniff is not in itself a search. But our disagreement relates to the infringement of the defendants' expectation of privacy when the officers randomly seized defendants' luggage from the security of the overhead compartment to allow Jupp to sniff it. *Cf. United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) ("A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."). By removing the luggage from the overhead compartment, the officers here clearly initiated "a new invasion of respondent's privacy unjustified by the ... circumstance that validated the entry." *Hicks,* 480 U.S. at 325, 107 S.Ct. at 1152.

In his dissent in *Florida v. Bostick,* Justice Marshall condemned the majority's refusal to strike down the suspicionless "dragnet-style" police sweeps of buses in interstate or intrastate travel. He endorsed the view of a Florida court which observed:

> [T]he evidence in this cause has evoked images of other days, under other flags, when no man traveled his nation's roads or railways without fear of unwarranted interruption, by individuals who held temporary power in the Government. The spectre of American citizens being asked, by badge-wielding police, for identification, travel papers—in short a *raison d'etre*—is foreign to *any* fair reading of the Constitution, and its guarantee of human liberties. This is not Hitler's Berlin, nor Stalin's Moscow, nor is it white supremacist South Africa.

111 S.Ct. at 2391 (Marshall, J., dissenting) (quoting *Bostick v. State,* 554 So.2d 1153, 1158 (Fla.1989) (quoting *State v. Kerwick,* 512 So.2d 347, 348 (Fla.Dist.Ct.App.1987))).

Although suspicionless police sweeps were permitted in *Bostick,* the entry of a bus by officers accompanied by a police dog, in my judgment, offends the sensibilities of most members of the public. One need not possess a vivid imagination to picture the frightened reaction of seated passengers in a cramped bus when police board with a muscular, sharp-toothed German shepherd which proceeds to sniff around their possessions and person. Surely society must condemn such action. In my view, intrusive police practices go far beyond the outer limit when police *accompanied by dogs* board buses to sniff out drugs which they have no reasonable suspicion to believe exist. More important than my personal view, however, intrusion into an individual's privacy interests in his stored luggage, by removing the luggage without probable cause, clearly violates the Fourth Amendment under *Hicks.*

The majority's decision that individuals have no legitimate expectation of privacy when they place personal belongings in closed overhead compartments on common carriers will come as quite a surprise to the traveling public.

I respectfully dissent.

could anyone reasonably argue that an unauthorized search had not taken place?

---

**4.** Assume police officers lawfully within a person's home removed a suitcase to the front yard to allow a trained canine to sniff for drugs;