_____

No. 97-1051
_____

United States of America,        *
                                *
        Appellee,        *
                                *  Appeal from the United States
    v.                  *      District Court for the
                                *  Eastern District of Arkansas
Kevin Anthony Roby,        *
                                *
        Appellant.      *


_____

Submitted: May 20, 1997

Filed: August 21, 1997
_____

Before MURPHY and HEANEY, Circuit Judges, and ROSENBAUM,[1] District Judge.
_____


ROSENBAUM, District Judge.


    Appellant, Kevin Roby, entered a conditional plea of guilty to the charge of possessing cocaine with intent to distribute cocaine, in violation of 21 U.S.C. § 841, on September 23, 1996.  The plea was entered before the Honorable George Howard, United States District Judge for the Eastern District of Arkansas, pursuant to Rule

---

    [1]The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

11(a)(2) of the Federal Rules of Criminal Procedure. Roby's plea was conditioned on his appeal from the district court's denial of his motion to suppress evidence obtained pursuant to a search warrant.

## I.

At approximately 7:30 a.m. on May 9, 1996, Little Rock Police officers received a tip from the Dallas/Ft. Worth Drug Task Force. The officers were informed appellant had used cash to purchase a one-way ticket on an overnight flight. The flight left Los Angeles and arrived in Little Rock at 8:30 a.m. When the flight landed in Little Rock, the officers observed Mr. Roby quickly leave the airport gate and head in the direction of the baggage claim area, apparently unaware he was being followed by officers.

Sergeant Keathely, a uniformed officer, stopped Mr. Roby near the baggage claim area, displayed his credentials, and asked him to talk for a few moments. While still in public, Keathely asked Roby if he had a ticket and identification. Mr. Roby produced his boarding pass and driver's license. Keathely asked Mr. Roby why he was in Little Rock. Roby replied he was a paralegal and intended to open a business for disadvantaged youths. Roby denied having friends or family in Little Rock and said this was his first visit. Mr. Roby told Officer Keathely he was going to stay at the Hampton Inn.

Keathely asked for permission to search Roby's luggage. Roby declined. Keathely then returned Roby's license, but failed to return his boarding pass.

Keathely reminded Roby he was free to go. Mr. Roby then took his baggage, hailed a taxi, and left the area. Officers Wellborn and Jones followed appellant to the Hampton Inn. Keathely, claiming an intention to return the boarding pass, instructed Officer Wellborn to ask Mr. Roby to wait in the motel reception area until he arrived. Keathely also called for a canine unit officer to come to the Hampton Inn.

After registering at the motel, Mr. Roby began walking to his room. Wellborn stopped him and requested he remain in the lobby until Keathely arrived. A few minutes later, Officer Keathely arrived. Keathely returned appellant's boarding pass and asked Roby if he would consent to a canine sniff of his baggage. Appellant again declined and proceeded to his room.

Wellborn followed, as Roby left the lobby and went to the fourth floor. Roby stopped at Room 424, which would not open with his key. Roby next went to Room 426, which he was able to open. While Roby was walking to his room, the front desk clerk told Keathely that Roby had stayed at the hotel twice previously, on April 4 and April 16. The clerk also told Keathely that appellant was registered in Room 426.

Twenty minutes later, a member of the Little Rock Police Department canine unit brought his dog, Nero,[2] to the fourth floor. Nero walked the hall two or three times, making a positive alert at Room 426 each time. Based on this alert, Keathely instructed Wellborn to return to Little Rock and obtain a search warrant. The other officers were sent to secure Room 426.

---

[2]Roby does not challenge Nero's abilities or qualifications.

Knocking first, then speaking through the closed door, the officers identified themselves and informed Mr. Roby they were securing the room while a search warrant was obtained. The officers told Roby he was not under arrest and was free to leave. After the officers heard a toilet flush, Roby let them into his room. The officers did not search, question, or restrain Roby. While waiting for the warrant, Roby proceeded, alone, to the vending room and purchased a soda. When the warrant arrived, the officers searched the room and Mr. Roby's briefcase, finding ten kilograms of cocaine. Once the cocaine was discovered, Mr. Roby was placed under arrest.

## II.

Roby appeals the denial of his motion to suppress evidence obtained during the search of his hotel room, arguing the evidence is fruit from a poisonous tree. See Wong Sun v. United States, 371 U.S. 471 (1963). He claims the police did not have reasonable suspicion to support the airport or hotel lobby encounters. He also claims the hallway dog sniff violated his Fourth Amendment rights and should not have been used to support a probable cause finding. He claims these encounters were illegal, and absent the evidence derived from each encounter, there was insufficient evidence upon which to base the search warrant. Finally, Roby claims the officers violated his Fourth Amendment rights when they entered his hotel room to await the arrival of a search warrant.

The government conceded at oral argument that the lobby encounter was impermissible. While we do not countenance such activity, no information whatever was obtained during this moment's-long stay. Any government wrong, therefore,

caused no cognizable harm and is without consequence in our decision.  The
government, however, defends the airport stop and the canine sniff in the
hotel hallway.

The Court examines each encounter separately, reviewing findings of
fact for clear error and ultimate legal conclusions de novo, see United
States v. Hathcock, 103 F.3d 715, 718 (8th Cir. 1997).  We will affirm an
order denying the suppression of evidence, unless the decision lacks the
support of substantial evidence, is based on an erroneous view of the law,
or this Court is left with a firm conviction that a mistake has been made.
See United States v. Keene, 915 F.2d 1164, 1167 (8th Cir. 1990); U.S. v.
Pantazis, 816 F.2d 361, 363 (8th Cir. 1987).

The Fourth Amendment to the United States Constitution protects
against unreasonable government searches.  A search is unreasonable if it
is not conducted pursuant to a warrant, based upon probable cause, and
described with particular specificity.  See Amos v. United, 255 U.S. 313,
315 (1921).  In order to deter police misconduct, evidence obtained from
unreasonable searches or seizures is inadmissible.  See Weeks v. United
States, 232 U.S. 383 (1914); United States v. Leon, 468 U.S. 897, 916
(1984); United States v. Peltier, 422 U.S. 531, 539 (1975).

Not every investigatory encounter, however, rises to the level of a
Fourth Amendment search or seizure.  A search within the meaning of the
Amendment "occurs when an expectation of privacy that society is prepared
to consider reasonable is infringed" United States v. Jacobson, 466 U.S.
109, 113 (1984); United States v. Pinson, 24 F.3d 1056, 1058 (8th Cir.
1994).  See also Katz v. United States, 389 U.S.

5

347, 472 (1967). We, then, examine the official contacts between government agents and Mr. Roby to determine whether illegally obtained information was used to support the challenged search warrant.

A.

Roby claims his airport encounter with the Little Rock Police officers was an illegal Terry stop, unsupported by reasonable and articulable suspicion. See Terry v. Ohio, 392 U.S. 1 (1968). Mr. Roby is incorrect. Terry only comes into play when there is a seizure, and none occurred at the airport in this case. "Obviously not all personal intercourse between police and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." United States v. Mendenhall, 446 U.S. 544, 554 (1980). The question is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. See Florida v. Bostick, 501 U.S. 429, 437 (1991).

Roby voluntarily spoke in a public place to officers who identified themselves and told him he did not have to speak to them. The officers deferred to his declaration that he did not wish to allow a search of his baggage and allowed him to depart. Mr. Roby's denial of permission to search, and his subsequent departure, underscore the fact that he was neither in custody nor was his will overborne by his contact with Little Rock Police. See Bostick, 501 U.S. at 435. Although one officer retained Roby's used passenger boarding pass, the item was worthless, and no information from the document was used to support the search warrant. There being no seizure, and a very

6

limited intrusion into Roby's freedom, the officers need not show an objective justification for their actions.  See Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Sadosky, 732 F.2d 1388, 1392 (1984). Under these circumstances, we discern no taint in the airport encounter.

B.

Roby next argues that his contact with police at the Hampton Inn constituted a second Terry stop, unsupported by reasonable suspicion that "criminal activity may be afoot."  Terry v. Ohio, 392 U.S. 1 (1968).  The flaw in Roby's argument is that, while the police actions in delaying him to allow Keathely to return his boarding pass were an acknowledged error, no evidence was obtained from this brief encounter or used to support the search warrant affidavit.  While this tree may have been poisonous, it bore no fruit.

C.

The sniff of a trained police dog is quick, and the dog's reaction can frequently signal the presence or absence of contraband.  See United States v. Place, 462 U.S. 696 (1983) ("[T]he canine sniff is sui generis. We are aware of no other investigative procedure that is so limited in the manner in which the information is obtained and in the content of the information revealed by the procedure."  Id. at 707).  Because a dog's sniff "could reveal nothing about non-contraband items," it does not generally intrude into a person's reasonable expectation of privacy. United States v. Jacobson, 466 U.S. 109 (1984) (a test that merely discloses whether a substance is or is not

7

cocaine is not a search within the meaning of the Fourth Amendment).

In this case, we consider whether a canine sniff in the common corridor of a hotel intrudes upon a legitimate expectation of privacy. See United States v. Thomas, 757 F.2d 1359 (1985). "The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." Oliver v. United States, 466 U.S. 170, 177-78 (1984). It has long been recognized that reasonable expectations of privacy vary according to the context of the area searched. See O'Connor v. Ortega, 480 U.S. 709, 719 (1987).

Here, Nero walked the Hampton Inn's fourth floor hallway. During this walk, he alerted at Room 426, the room occupied by Mr. Roby. Roby contends the dog's detection of the odor molecules emanating from his room is the equivalent of a warrantless intrusion. We find that it is not. The fact that the dog, as odor detector, is more skilled than a human does not render the dog's sniff illegal. See United States v. Sullivan, 625 F.2d 9, 13 (4th Cir. 1980). Just as evidence in the plain view of officers may be searched without a warrant, see Harris v. United States, 390 U.S. 234, 236 (1968), evidence in the plain smell may be detected without a warrant. See United States v. Harvey, 961 F.2d 1361, 1363 (8th Cir. 1992); See also Horton v. Goose Creek Independent School District, 690 F.2d 470, 477 (5th Cir. 1982); United States v. Pinson, 24 F.3d 1056, 1058 (8th Cir. 1994) ("plain feel," no reasonable expectation of privacy in heat emanating from a home).

Mr. Roby had an expectation of privacy in his Hampton Inn hotel room. But

because the corridor outside that room is traversed by many people, his reasonable privacy expectation does not extend so far. Neither those who stroll the corridor nor a sniff dog needs a warrant for such a trip. As a result, we hold that a trained dog's detection of odor in a common corridor does not contravene the Fourth Amendment. The information developed from such a sniff may properly be used to support a search warrant affidavit.

D.

After Nero alerted to the odor of contraband, the officers obtained a search warrant for Mr. Roby's room. While waiting for the warrant to issue, they secured the room to preserve any evidence inside. They did so, however, after announcing themselves and allowing Roby to use the room's lavatory facilities. Roby's own movement was unencumbered. The officers' efforts to secure his room while awaiting the warrant were in accord with the Fourth Amendment.

The officers, recognizing that any contraband could have been flushed away while they stood outside the room, reasonably believed that evidence was in danger of being destroyed. See Segura, 468 U.S. at 806. The officers entered, but took no investigative steps; they merely preserved the space and checked to assure their own safety. There was full compliance with the mandate of the Fourth Amendment. See United States v. Kulcsar, 586 F.2d 1283, 1287 (8th Cir. 1978) ("The presence of evidence reasonably believed to be in imminent danger of removal or destruction is well recognized as a circumstance which may permit immediate police action.").

9

E.

A valid warrant, based on probable cause, issues when a practical, common-sense evaluation of facts and circumstances shows a fair probability that contraband or other evidence will be found in the identified location. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Our task on review is "simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." Id. at 238-9. Here the issuing judge received an affidavit containing legally obtained information which showed Mr. Roby: (1) traveled to Little Rock on a one-way ticket purchased with cash; (2) gave false and misleading explanations for his trip to Arkansas; (3) stated that he was in Little Rock for the first time, when the desk clerk stated he had stayed at least twice before; and (4) resided in a room at which a sniff-dog signaled an alert for the presence of drugs. This evidence provided a fair probability that illegal drugs would be found in appellant's room and luggage. See United States v. Armstead, 112 F.3d 320 (8th Cir. 1997) (upholding a search warrant on fewer predicate facts).

Having found no Fourth Amendment violations which taint the challenged warrant, we find no basis to suppress any evidence deriving therefrom.

III.

Accordingly, the District Court's Order denying appellant's motion to suppress

10

is AFFIRMED.

HEANEY,  Circuit Judge, dissenting.

The Supreme Court and this court have long recognized that the constitutional protection against unreasonable searches and seizures of a home or an apartment apply with equal force to a person's privacy in a temporary dwelling place such as a hotel room.  Stoner v. California, 376 U.S. 483, 490 (1964); United States v. Rambo, 789 F.2d 1289, 1295 (8th Cir. 1986).  Applying those precedents to this case, the dog sniff outside of Roby's hotel room violated his right to privacy under the Fourth Amendment.  Employing the so-called "plain smell" doctrine and focusing on the corridor outside Roby's hotel room, the majority substantially erodes the reasonable expectation of privacy that we have always recognized.  While the use of trained dogs to detect narcotics is justifiable in airports or other public areas, see United States v. Place, 462 U.S. 696, 707 (1983) (airports); United States v. Harvey, 961 F.2d 1361, 1363 (8th Cir. 1992) (overhead baggage area on commercial bus); it should not be extended to permit governmental intrusion into the privacy of a hotel room.  The random patrolling of hotel hallways with trained police dogs, in my judgment, goes against the personal and societal values protected by the Fourth Amendment.  Without the dog's alert at Roby's hotel room door, the government has as much conceded that they would not have had probable cause for the warrant.  I thus respectfully dissent from Parts II.C-E of the majority's opinion.

As the majority recognizes, reasonable expectations of privacy vary according to the context of the area searched.  See O'Connor v. Ortega, 480 U.S. 709, 719

11

(1987).  Yet in implying that this case falls under a "plain smell" warrant exception, the majority cites several cases, all of which involve extremely different factual contexts.  In <u>Harvey</u>, where our court held that the defendants had no expectation of privacy in the "ambient air surrounding their luggage," 961 F.2d at 1363, the defendants were traveling on a Greyhound bus and had placed their luggage in an overhead baggage area that had no individual compartments and that could not be locked to the exclusion of other passengers.  <u>Id</u>. at 1362.  In other words, the dog sniff in <u>Harvey</u> took place in a highly public area and in the context of public transportation where, consistent with what the Supreme Court has said about airports, there is a strong governmental interest in preventing the flow of narcotics into distribution channels.  <u>See</u> <u>Place</u>, 462 U.S. at 704, 707 (permitting the dog sniff of luggage in an airport, a public place where drug courier activity is "inherently transient").  Nor is this case like <u>Horton v. Goose Creek Indep. Sch. Dist.</u>, 690 F.2d 470, 477 (5th Cir. 1982), in which the Fifth Circuit held that the dog-sniffing of student lockers in public hallways and automobiles parked on public parking lots did not constitute a search.

Rather, this case is much closer to <u>United States v. Thomas</u>, 757 F.2d 1359, 1367 (1985), in which the Second Circuit held that the use of a dog to sniff for narcotics outside an apartment constituted a search that, in the absence of probable cause and a warrant, violated the Fourth Amendment.  Recognizing the heightened privacy interest that persons have in their homes, the Second Circuit noted that a practice that is not intrusive in a public airport can certainly be intrusive when employed at a person's home.  <u>Id.</u> at 1366.  The court decided that the defendant had a "legitimate expectation that the contents of his closed apartment would remain private, and such contents could not be `sensed' from outside his door" without the

significant enhancement provided by the trained dog.  Id. at 1367.

Similarly, guests of a hotel have a legitimate expectation that the contents of their closed hotel room will remain private to some degree.  See Stoner, 376 U.S. at 490 (hotel rooms protected under the Fourth Amendment to the same extent as homes); Rambo, 789 F.2d at 1295 (same).  By its nature, of course, a hotel is less private than an apartment or a home.  Nonetheless, hotel personnel limit access to the rooms and hotel guests, in large part, maintain control over who enters their rooms.  While the corridor of a hotel is shared by guests and hotel personnel alike, it is not a public area akin to an airport or a commercial bus.  Neither guests nor the hotel personnel expect to have police officers, much less large German Shepherds, patrolling the hotel hallways.  The majority, in highlighting that the hotel corridor significantly limits Roby's expectation of privacy in his room seems ready to accept that persons who live in apartment complexes similarly have a limited expectation of privacy in their rented home because other people have access to the apartment hallways.  I do not believe that the Fourth Amendment protects only those persons who can afford to live in a single-family residence with no surrounding common space.

In my view, Roby had a legitimate expectation of privacy in his closed hotel room.  Without the impermissible intrusion into that privacy--the dog-sniffing from the hallway--I do not believe that the officers had probable cause to search his hotel room.  I therefore would reverse the district court's denial of Roby's motion to suppress the evidence seized from his room.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.