# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1612

_____

UNITED STATES OF AMERICA,   *
                               *

      Plaintiff - Appellee,   *
                               *

     v.                        *     Appeal from the United States
                               *     District Court for the

EDDIE ALCAREZ MORENO,   *     Norther District of Iowa
                               *

      Defendant - Appellant.   *

Submitted: December 11, 2001
Filed: January 29, 2002

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and FENNER,[1] District Judge.

FENNER, District Judge.

Appellant, Eddie Moreno, entered a conditional guilty plea to a charge of possession with intent to distribute more than 500 grams of methamphetamine. On appeal, Moreno argues that the district court[2] erred by denying his Motion to Suppress Evidence.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

On March 31, 2000, Trooper Chris Calloway of the Iowa State Patrol stopped appellant as he was traveling north on Interstate 35 in Iowa. Appellant's vehicle did not have a license plate and Trooper Calloway did not recognize the paper in the back of Moreno's vehicle as a legitimate temporary plate. However, upon closer inspection after stopping Moreno, checking his driver's license, as well as the registration and title to the car, Trooper Calloway was able to ascertain that the temporary plate was valid. In the course of his investigation, Trooper Calloway did determine that neither Moreno nor his passenger had a valid driver's license. Trooper Calloway further detected a strong odor of perfume in the car, received conflicting stories from Moreno and his passenger about the purpose of their travel, and observed nervous behavior from them.

After issuing appellant a traffic ticket for driving with a suspended license, Trooper Calloway asked for permission to search the car and appellant orally consented. Trooper Calloway then presented appellant with a written consent to search form and when appellant asked what it was for, Trooper Calloway told him it was good not to sign things before asking questions and advised appellant as follows: "What I always tell them, if ya, if ya have drugs in your car, don't, don't consent to a search, but if ya, if ya have drugs, then you don't have anything to hide, right?"[3]

Moreno signed the written consent to search, but the roadside search was unproductive other than to reveal suspicious paint overspray and missing screws. Trooper Calloway asked for permission to continue the search, Moreno once again consented and the car was towed to a service station while Moreno and his passenger were dropped off at a nearby truck stop as they requested. Moreno was given the number of the service station where the car was towed in order that he would be able

---

[3]This was Trooper Calloway's testimony at the suppression hearing, however, it is not disputed that he meant to testify that he told appellant: "If you have drugs, then don't consent, but if you don't have drugs, then you don't have anything to hide."

to contact Trooper Calloway if he wanted, but he did not call. The final search revealed that the car contained 4,409.3 grams of methamphetamine.

Moreno filed a motion to suppress. The district court found that the initial stop was illegal, but that Moreno's subsequent consent to search his vehicle was voluntary and purged any taint from the initial stop.[4] On appeal, Moreno argues that his consent to search was not voluntary and therefore did not purge what was otherwise found to be an illegal stop.

A district court's finding that a consent to search was given voluntarily is reviewed for clear error. *See Untied States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990). The government must prove voluntariness of consent to search by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 (1974). Even if the initial stop is illegal, a court must decide if subsequent consent was, nevertheless, "sufficiently an act of free will to purge the primary taint." *See United States v. Ramos*, 42 F.3d 1160, 1164 (8th Cir. 1994), *cert. denied*, 514 U.S. 1134, 115 S.Ct., 131 L.Ed.2d 1013 (1995) (*quoting Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

In determining whether a confession retains the taint of an illegal seizure, the Supreme Court identified three factors the courts should consider: 1) the temporal proximity of the illegality and the confession; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590 (1975). The same factors as identified by the United States

---

[4]The district court found that the only reason Trooper Calloway stopped Moreno was because he was unfamiliar with the temporary tag displayed on Moreno's vehicle. The district court found that the trooper should have been familiar with the tag and concluded that "an objective assessment of the facts and circumstances of this stop compels the conclusion that the officer lacked any articulable, reasonable suspicion of unlawful conduct." There is no appeal of the district court's finding that the initial stop was illegal. We assume without deciding that the initial stop was illegal.

Supreme Court in *Brown*, in determining whether a confession retains the taint of an illegal search are relevant in determining whether a voluntary consent to search retains the taint of an illegal stop or arrest. *United States v. Tovar*, 687 F.2d 1210, 1215 (8th Cir. 1982). "Voluntariness is a question of fact to be determined from all the circumstances," not just by focusing on a single statement made by the officer. *Schneckloth v. Bustamonte*, 412 U.S. 218, 231 (1973).

Considering the *Brown* factors and all of the circumstances of this case, the district court did not err in finding appellant's consent to search voluntary. Temporal proximity weighs in favor of voluntariness. When appellant was initially stopped, he consented to having his vehicle searched when first approached. Appellant then consented a second time to allow his vehicle to continue to be searched and further registered no objection while the vehicle was being searched after it was towed. There was considerable passage of time from the initial stop determined by the district court to be illegal and appellant's consent to have his vehicle searched the second time. This passage of time reflects that Moreno's consent was an act of free will.

Additionally, in the case at bar, Trooper Calloway advised appellant that he had the right to refuse to consent to the search continuing before the vehicle was towed. Such an intervening circumstance supports the voluntariness of appellant's consent indicating that the trooper was not attempting to exploit an illegal situation. *See United States v. Ramos*, 42 F.3d 1160, 1164 (8th Cir. 1994).

Finally, although the district court found the initial stop to have been illegal, the court specifically found that the trooper's "actions were not taken in bad faith and the constitutional violation was not purposeful or flagrant." The district court also found that the trooper's statement to appellant (about not consenting if he had drugs, but consenting if he had nothing to hide), "was not made with the intent to trick defendant Moreno into consenting to a search of his vehicle." The district court

found that this statement, "which was made after Moreno had already orally consented to a search of the [vehicle] [did not] improperly induce[] defendant Moreno's consent."

Appellant argues that the trooper's statement placed him in the untenable position of either consenting to the search or incriminating himself by refusing to allow the search. Appellant argues that none of the *Brown* factors or circumstances of this case are sufficient to overcome the causal connection between the stop found to be illegal and appellant's consent. However, there is nothing in the record to show that appellant felt coerced by Trooper Calloway's statement other than appellant's argument here. To the contrary, the record is replete with evidence that appellant's consents were voluntary. Appellant first gave oral consent to search, then written consent. Appellant then gave another oral consent even after being advised that he did not have to consent. Appellant was provided the opportunity to object to the continued search at anytime, but he failed to do so.

The judgment of the district court finding appellant's consent voluntary and denying his motion to suppress evidence is not clearly erroneous and it is affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT