# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3394

———————

United States of America,

           Appellant,

    v.

Keith A. Va Lerie,

           Appellee.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska

———————

Submitted: March 9, 2004
Filed: October 14, 2004

———————

Before RILEY, McMILLIAN and MELLOY, Circuit Judges.

———————

McMILLIAN, Circuit Judge.

Keith A. Va Lerie ("defendant") was charged by indictment in the United States District Court[1] for the District of Nebraska on one count of possession with intent to distribute 500 grams or more of a mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1). Now before this court is an interlocutory appeal by the government from an order of the district court granting defendant's motion to suppress evidence obtained when defendant's garment bag was searched while he was traveling by bus and stopped at a bus station. United States v. Va Lerie,

———————

[1]The Honorable Joseph A. Bataillon, United States District Judge for the District of Nebraska.

No. 8:03CR23 (D. Neb. Aug. 14, 2003) (memorandum and order) (hereinafter "District Court Order"). For reversal, the government argues that the district court (1) erred in holding that defendant's garment bag was "seized" within the meaning of the Fourth Amendment when the bag was removed from the bus and brought to a room in the rear baggage terminal for the purpose of seeking the owner's consent to search the bag and (2) clearly erred in finding that defendant's alleged consent to the search of his garment bag was not express and was not voluntarily given. For the reasons stated below, we affirm the order of the district court.

Jurisdiction was proper in the district court based upon 18 U.S.C. § 3231. Jurisdiction is proper in this court based upon 18 U.S.C. § 3731. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

Defendant was indicted on January 23, 2003. On March 10, 2003, he filed his motion to suppress. The motion was submitted to a magistrate judge, who held an evidentiary hearing and permitted the parties to file post-hearing briefs. Following those proceedings, the magistrate judge issued a report and recommendation on June 10, 2003. United States v. Va Lerie, No. 8:03CR23 (D. Neb. June 10, 2003) (hereinafter "Magistrate Judge's Report"). In his report, the magistrate judge made the following findings of fact.

On December 23, 2002, defendant was traveling from Los Angeles, California, to Washington, D.C., on a Greyhound bus. The bus stopped for refueling at approximately 12:00 noon at the Greyhound bus station in Omaha, Nebraska. At that time, Investigator Alan Eberle of the Nebraska State Patrol ("NSP") was at the Omaha Greyhound bus station performing duties for the NSP Commercial Interdiction Unit. While defendant's bus was being refueled, Eberle looked in the lower luggage compartments of the bus. He noticed a newer-looking garment bag among three or

four other bags inside one of the luggage compartments. That garment bag had a baggage ticket bearing an individual's name but no telephone number. It had no additional handwritten name tag. Eberle ran a computer check of the claim number appearing on the baggage ticket and learned that the passenger, using the name "Valerie Keith," had paid $164 in cash on the day of travel for a one-way ticket. Eberle then had NSP investigators remove the garment bag from the bus and take it into a room in the rear baggage terminal. Eberle had "Valerie Keith" or "Keith Valerie" paged over the intercom system with instructions to come to the ticket counter. When defendant responded, Eberle showed defendant his NSP badge and identified himself as a law enforcement officer. Eberle told defendant that he was not in trouble and not under arrest. Eberle asked defendant to produce his bus ticket and some identification, which defendant did. After confirming that the name on the ticket and identification matched the name on the garment bag, Eberle returned the ticket and identification to defendant. Eberle then led defendant to the room in the rear baggage terminal where defendant's garment bag was being held. The room had two open doors, and inside the room were two or three officers. One of the officers in the room was Omaha Police Investigator Lutter. When asked if the garment bag was his, defendant confirmed that it was. Eberle told defendant that he was a narcotics investigator and that he was watching for people who might be transporting illegal drugs. According to Eberle, he asked defendant for permission to search the garment bag and defendant "made an affirmative verbal response to the request for consent to the search." Magistrate Judge's Report at 3.[2] Lutter searched the garment bag. The search took approximately one minute. During the search Eberle made a comment about the garment bag, and defendant responded that it belonged to a friend. Lutter found inside the garment bag five vacuum-sealed bags containing cocaine. Defendant was placed under arrest and taken to an NSP office where he was read his

---

[2]However, when Eberle later filled out a police report concerning the incident, he provided no details about what defendant said to give consent to the search of the garment bag. Magistrate Judge's Report at 3.

Miranda rights. Defendant declined to waive his Miranda rights, declined to be interviewed, and requested an attorney.[3]

The magistrate judge determined that, at the time the garment bag was removed from the bus and taken to the room in the rear baggage terminal, a Fourth Amendment seizure occurred in the form of an investigative detention. Magistrate Judge's Report at 5-6. The magistrate judge nevertheless opined that Eberle had "the requisite level of reasonable articulable suspicion" to justify the seizure. Id. at 6. The magistrate judge also noted that "the removal of the bag was done in accordance to an understanding between Greyhound and the NSP to prevent passengers from walking into the refueling area." Id. at 6. The magistrate judge concluded that, under the totality of the circumstances, no Fourth Amendment violation occurred as a result of the seizure of defendant's garment bag. Id. at 6-7. The magistrate judge additionally concluded that defendant had voluntarily consented to the search of the garment bag. Id. at 8-9. The magistrate judge thus recommended denial of defendant's motion to suppress physical evidence obtained as a result of the search of the garment bag.

---

[3]After defendant expressly declined to waive his Miranda rights and requested an attorney, Eberle and Lutter continued to press him to cooperate. Eberle told defendant that he (defendant) "would probably be federally prosecuted if he did not cooperate and possible consequences would ensue"; when defendant expressed fears about cooperating, Lutter stated that "in his (Investigator Lutter's) extended experience, he had never had an informant or cooperative be injured as a result of [his or her] cooperation." Magistrate Judge's Report at 3-4. In his motion to suppress, defendant sought suppression of all statements he made after invoking his Miranda rights. The government argued that, notwithstanding the admitted Miranda violation, the statements in question should nevertheless be admissible to impeach defendant. The magistrate judge rejected the government's argument and recommended suppression of defendant's statements. Id. at 10-11. The government objected to that aspect of the magistrate judge's report and recommendation. On review, the district court held that the statements were "inadmissible at trial for any purpose, including impeachment." District Court Order at 16-17. The government has not appealed that ruling.

The parties filed objections to the Magistrate Judge's Report.[4] Regarding the seizure of the garment bag, the district court held: "the removal of the defendant's bag and its sequestration in a room of the bus terminal constituted an unconstitutional seizure in violation of the defendant's Fourth Amendment rights because they occurred without consent, reasonable suspicion, probable cause, or a warrant." District Court Order at 11. Regarding the voluntariness of defendant's alleged consent to the search of the garment bag, the district court noted, among other things, that defendant was a person of sufficient intelligence to give consent, the officers were not required to tell him that he could withhold consent, and Eberle was in plain clothes with no visible weapon; on the other hand, defendant was "alone, in a private room, with at least two armed police officers" and "[h]is bag was already in the possession of law enforcement officers" when he allegedly gave his consent for them to search it. The district court concluded that, under the totality of the circumstances, "defendant's consent was not voluntarily given." Id. at 14. Moreover, the district court noted that little time had transpired between the seizure of the garment bag and defendant's consent, and there were no significant intervening events. The district court held that, notwithstanding Eberle's testimony that he was merely accommodating Greyhound's request that they not bring passengers to the bus while it was parked in the refueling area, the government had not met its burden to prove that defendant's consent was an independent act of free will which broke the causal

---

[4]Defendant objected to, among other aspects of the Magistrate Judge's Report, the conclusions that the seizure of the garment bag was based on articulable suspicion, that the seizure was reasonable, that he gave consent to the search of the garment bag, and that such consent, if given, was valid. The government objected to the magistrate judge's report insofar as it "denie[d] the use of defendant's statements for impeachment purposes should the defendant testify at trial." See Original U.S. District Court File (Documents #20 and #22). On review, the district court additionally addressed the question of whether a Fourth Amendment seizure had occurred as a result of the garment bag being removed from the bus and detained in the room in the rear baggage terminal, even though the government did not specifically object to that aspect of the Magistrate Judge's Report.

connection between the constitutional violation and the consent that led to the discovery of evidence. Id. at 12-16. The district court thus concluded that the taint of the illegal seizure had not been purged. The district court granted defendant's motion to suppress, and the government timely filed this interlocutory appeal.

**Discussion**

As a general rule, "[w]e review the district court's decision to grant a suppression motion de novo while reviewing the underlying factual determinations for clear error." United States v. Logan, 362 F.3d 530, 532 (8th Cir. 2004) (citing United States v. Walker, 324 F.3d 1032, 1036 (8th Cir.) (Walker), cert. denied, 124 S. Ct. 247 (2003)). For purposes of the issues raised by the government in the present appeal, we review de novo the district court's legal conclusions concerning whether a seizure has occurred within the meaning of the Fourth Amendment, and we review for clear error the district court's factual findings regarding the nature of defendant's alleged consent to the search. See, e.g., United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001) ("We review the question of whether a seizure has occurred de novo and the district court's determination of voluntariness for clear error.") (citing United States v. Mendoza-Cepeda, 250 F.3d 626, 628 (8th Cir. 2001)).

Property is "seized" within the meaning of the Fourth Amendment when there is "some meaningful interference with an individual's possessory interests in that property." United States v. Demoss, 279 F.3d 632, 635 (8th Cir. 2002) (Demoss) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)); United States v. Riley, 927 F.2d 1045, 1047 (8th Cir. 1991) (same). The government first argues that defendant's garment bag was not "seized" in the constitutional sense when Eberle had the bag removed from a lower luggage compartment on the bus and taken to a room in the rear baggage terminal at the Omaha Greyhound bus station. For support, the government highlights Eberle's testimony at the suppression hearing that, in order to accommodate Greyhound's request not to have excess people in the refueling area,

it had been NSP's practice for over a year to have any suspicious bag found on a bus brought into the rear baggage terminal before an attempt was made to contact the owner. Eberle also testified that NSP had never previously been advised that their practice of bringing bags into the rear baggage terminal was unconstitutional. He stated that it was his understanding that, when an NSP officer removed a bag from a bus in this manner, the bag nevertheless remained in Greyhound's custody and the officers were merely taking care of it.

The government further argues that there is no meaningful distinction – in terms of interference with an individual's possessory interests – between removing a bag from a luggage compartment and setting it down in or near the bus and moving the bag from the bus to a location farther away. The difference, the government maintains, is merely a "geographical consideration." Brief for Appellant at 10.

The government also suggests that the handling of luggage not in an individual's actual physical possession is analogous to the handling of packages placed in the mail stream. Id. (citing United States v. Harvey, 961 F.2d 1361 (8th Cir.) (Harvey) (per curiam), cert. denied, 506 U.S. 883 (1992); United States v. Riley, 927 F.2d 1045 (8th Cir. 1991)). Thus, in further support of its argument that no seizure occurred under the Fourth Amendment, the government cites Demoss and United States v. Gomez, 312 F.3d 920 (8th Cir. 2002) (Gomez), as analogous mail stream cases. The government also cites, as factually similar, a Seventh Circuit case involving a bag that was searched during bus transit, United States v. Ward, 144 F.3d 1024, 1030-33 (7th Cir. 1998) (Ward) ("Although [the officer] lacked a reasonable basis to 'seize' the bag . . . we do not agree that the bag was in fact seized in a way that implicated [the defendant's] Fourth Amendment interests. . . . We are talking now solely about the removal of the bag from the common luggage area of the bus.").

The government sums up its argument as follows:

The investigators' activities with the bag in the instant case to the point where they first discussed the bag with [defendant] in the terminal office was not a constitutional seizure because it in no way produced any meaningful interference with [defendant's] possessory interest in the bag. Taking the bag from the refueling area to the baggage office and to then find and converse with the bag owner required no constitutional "reasonable suspicion" because no constitutional seizure is disclosed by these facts. This assertion is buttressed by the testimony of Investigator Eberle to the effect that the officers were merely complying with Greyhound's wishes, and that as far as Investigator Eberle was concerned the bag was still in the "custody" of Greyhound even when he removed it to the office in the terminal.

Brief for Appellant at 12.

We disagree with the government's assertion that, in the present case, the officers' handling of defendant's garment bag, prior to the point at which Eberle asked defendant for consent to search the bag, "in no way produced any meaningful interference with [defendant's] possessory interest in the bag." Id. This court has made clear that neither the mere removal of an item from its ordinary stream of travel, nor the distance it is moved, disposes of the Fourth Amendment "seizure" issue. Our precedents establish that a Fourth Amendment seizure occurs when an official "exert[s] dominion and control over the [item] by deciding to go beyond a superficial inspection of the exterior of the [item] and to detain the [item] for further inquiry into characteristics that [cannot] be observed by merely holding the [item]." Gomez, 312 F.3d at 923 n.2, cited in United States v. Morones, 355 F.3d 1108, 1111 (8th Cir. 2004).

Defendant had a reasonable expectation of privacy in the contents of his garment bag. That is not to say that defendant reasonably could expect that no one would handle, observe, touch, or move his garment bag. A bus passenger who has left his or her bag in a common luggage compartment of a bus reasonably expects the bag to be subject to some degree of handling and movement by others. "Passengers

have no objective, reasonable expectation that their baggage will never be moved once placed in an overhead compartment. It is not uncommon for the bus driver or a fellow passenger to rearrange the baggage in the overhead compartment or to temporarily remove the baggage and place it in a seat or in the aisle in order to rearrange and maximize the use of limited compartment space." Harvey, 961 F.2d at 1363-64 (removal of bag from overhead compartment of bus and placement in the aisle was not a seizure of the bag under the Fourth Amendment); accord Ward, 144 F.3d at 1032 (mere removal of bag from common luggage area of a bus was not a seizure implicating Fourth Amendment interests); cf. Demoss, 279 F.3d at 635-36 ("While [defendant's] expectation that the package would not be opened and searched en route was legitimate, . . . there could be no expectation that the package would not be handled or that its physical attributes would not or could not be observed.").

However, a bus passenger traveling with luggage placed in a common compartment of the bus does not reasonably expect that his or her luggage will be physically removed from the bus without his or her knowledge and detained so that consent to a search of the luggage may be sought. In such a situation, a detention for the purpose of seeking consent to search is not materially different from a detention for the purpose of conducting a canine sniff. In either situation, the item in question is detained to pursue investigative measures beyond what reasonably should be expected by an individual having possessory interests in the item. Indeed, the Seventh Circuit's decision in Ward, upon which the government relies, supports this view. In that case, the Seventh Circuit reasoned that the owner of a bag, which was being shipped by bus without any accompanying passenger, had no reasonable expectation that the bag, having been surrendered to the bus company for transport, would not be touched, handled, or even removed from the bus while en route to its destination; however, the court went on to hold that, when the officer – having unsuccessfully attempted to identify the bag's owner – then decided to detain the bag for purposes of conducting a canine sniff, he *did* seize the bag within the meaning of the Fourth Amendment. Ward, 144 F.3d at 1033-34 ("[H]is initial decision to detain

the bag for the canine sniff risked a delay for which the Fourth Amendment would require justification."); cf. Walker, 324 F.3d at 1036 ("It is clear under our precedent that when [the postal inspector] moved the package to a separate room for a canine sniff, the package was seized for Fourth Amendment purposes.") (citing Demoss, 279 F.3d at 636-37). We therefore hold in the present case that defendant's garment bag was seized within the meaning of the Fourth Amendment when Eberle had the bag removed from the bus, taken to a room inside the rear baggage terminal, and detained while the officer endeavored to locate the bag's owner and obtain consent to search the bag. Because there is no dispute in the present case that Eberle lacked reasonable suspicion to support a seizure of the garment bag if one occurred,[5] we hold that the seizure violated defendant's rights under the Fourth Amendment. The seizure of defendant's garment bag without reasonable suspicion was unconstitutional notwithstanding the government's claims that Greyhound had asked NSP not to bring passengers into the refueling area, that Eberle believed the bag remained in Greyhound's custody at all relevant times, and that defendant was unaware that his garment bag was being removed from the bus and handled by the NSP officers.

The government further argues that the district court clearly erred in finding that defendant did not voluntarily consent to the search of his garment bag and that he also did not explicitly consent to the search. Brief for Appellant at 13 (quoting District Court Order at 14 ("Certainly the defendant did not explicitly consent to the search. Based on all these factors, I conclude that the defendant's consent was not volutarily given.")). The government explains that it is separately challenging the district court's failure to find express consent because "[c]learly an explicit consent

---

[5]The government expressly declines to challenge the district court's adverse holding that Eberle lacked reasonable suspicion to support a seizure of the garment bag if one occurred when the bag was removed from the refueling area and brought to the rear baggage terminal. See Brief for Appellant at 5 ("[T]he United States does not advance the proposition that there was reasonable suspicion to remove the garment bag from the area where the bus was being refueled to the office in the bus terminal itself.") (emphasis original).

carries a presumption of voluntariness that might be harder to discern in an implicit consent." Brief for Appellant at 16. However, regarding the district court's separate adverse finding that defendant's consent was not an independent act of free will, see District Court Order at 16, the government asserts:

> The district court's discussion of whether the defendant's consent to search was a[n] "independent act of free will that broke the causal chain between the unconstitutional violation and the consent" is really irrelevant in light of the United States' assertion that no unconstitutional seizure took place. The only question presented is whether the consent – whether it be the implicit consent found by the court below or the explicit consent advanced by the United States on this appeal – was voluntary in light of the totality of the circumstances.

Brief for Appellant at 20-21.

In other words, the government's whole argument vis-a-vis the alleged consent to the search of the garment bag is premised upon the assumption that, when defendant's garment bag was removed from the bus and placed in the room in the rear baggage terminal, no seizure occurred within the meaning of the Fourth Amendment. The government has thus waived the argument that defendant's consent purged the taint of the illegal seizure if an illegal seizure occurred.[6]

As the district court explained, the law is well-established that, if the garment bag was seized in violation of the Fourth Amendment, the evidentiary fruits of that seizure must be suppressed unless the government, in relying upon defendant's

---

[6]Just as the government has made the tactical decision not to challenge the district court's lack-of-reasonable-suspicion holding in this interlocutory appeal, see *supra* note 5, so too has the government decided not to challenge the district court's adverse finding that defendant's alleged consent was not an independent act of free will that broke the causal chain between the unlawful seizure and the alleged consent leading to the search of the garment bag.

consent to the search, can prove (1) that the consent was voluntary *and* (2) that it was an independent act of free will that broke the chain of causation between the illegal seizure and the consent that permitted the discovery of evidence. See District Court Order at 12-14 ("The challenged evidence is admissible if 1) the consent was voluntarily given, and 2) the consent was 'an independent act of free will.'") (citing United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993)); see also United States v. Becker, 333 F.3d 858, 861-62 (8th Cir. 2003) ("Even if [the defendant's] consent to the search was voluntary, we must also consider, for purposes of the Fourth Amendment, whether [the defendant's] consent was given in circumstances that render it an independent, lawful cause of [the officer's] discovery of the methamphetamine")[7]; United States v. Ramos, 42 F.3d 1160, 1164 (8th Cir. 1994) (where the defendants were detained in violation of the Fourth Amendment, "[t]he further question [was] whether [one of the defendant's] consent, found to be voluntary by the District Court, was 'sufficiently an act of free will to purge the primary taint.'") (citing Wong Sun v. United States, 371 U.S. 471, 486 (1963)), cert. denied, 514 U.S. 1134 (1995); Brown v. Illinois, 422 U.S. 590, 601-02 (1975) ("[E]ven if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.'").

_____

[7]Regarding this second factor – that is, whether the consent was an independent act of free will – this court further explained: "In determining whether the taint is purged from evidence seized during the allegedly unlawful detention, we consider the following factors: (1) the temporal proximity between the illegal search or seizure and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." United States v. Becker, 333 F.3d 858, 862 (8th Cir. 2003) (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975)).

The government bears the burden to prove that defendant gave consent that was both voluntary and an independent act of free will. See Brown v. Illinois, 422 U.S. at 604 ("And the burden of showing admissibility rests, of course, on the prosecution."). In light of the government's tactical decision in the present interlocutory appeal not to challenge the district court's adverse finding that defendant's alleged consent was not an independent act of free will, the exclusionary rule applies. Accordingly, we need not consider whether the district court clearly erred in its findings concerning the voluntariness of defendant's alleged consent.

**Conclusion**

The order of the district court granting defendant's motion to suppress is affirmed.

MELLOY, Circuit Judge, concurring.

I concur in the result of this case because I believe the seizure issue is controlled by this Court's decision in United States v. DeMoss, 279 F.3d 632 (8th Cir. 2002). See also, United States v. Walker, 324 F.3d 1032 (8th Cir. 2003); and United States v. Morones, 355 F.3d 1108 (8th Cir. 2004). DeMoss held that the removal of a package from a Federal Express conveyor belt to a nearby room for further inspection constituted a seizure. DeMoss, 279 F.3d at 636. In this case, the removal was even more intrusive than the removal the Court held to be a seizure in DeMoss. In DeMoss, the package had been given to Federal Express for delivery. In our case, Mr. Va Lerie was traveling on the same bus with his luggage, and the luggage was removed from the checked luggage bin of the bus to a separate building. For purposes of Fourth Amendment analysis, I find the present facts to be indistinguishable from DeMoss and, therefore, based upon our prior precedent, a seizure occurred.

It is also important to note that the government expressly conceded that there was no reasonable suspicion to remove Mr. Va Lerie's luggage. As the majority opinion notes, the government also elected, in this case, not to argue that Mr. Va Lerie's consent to search purged the taint of the illegal seizure. The government made the tactical decision to challenge the district court decision solely on the grounds that the district court was wrong in its ruling that a seizure occurred. Based upon our prior precedent, I believe the majority correctly analyzed that issue, and the luggage was seized.

Having said that, however, I believe that our prior precedent dealing with the definition of a seizure is of questionable validity. Specifically, I join in Judge Hansen's well-written concurrence in DeMoss. I believe that our cases place undue emphasis on the issue of whether there was more than a superficial review of the package, or whether the package (or in this case, a piece of luggage) was moved to another room. Proper analysis requires consideration of the temporal element of the inspection. I believe that a brief detention of a piece of luggage that does not result in the delay of either the passenger, or ultimate delivery of the luggage, is not a seizure. Other circuits have so held. See, e.g., United States v. Johnson, 990 F.2d 1129, 1132 (9th Cir. 1992); United States v. Ward, 144 F.3d 1024, 1031-32 (7th Cir. 1998); and United States v. Lovell, 849 F.2d 910, 916 (5th Cir. 1988).

To be fair to the appellee in this case, the record is not well developed on the issue of whether the removal of the luggage from the bus would have resulted in any delay in its ultimate delivery. Like many cases, this one evolved through the litigation process. At the initial hearing before the magistrate judge, the parties focused the evidentiary record on whether there was reasonable suspicion to seize the luggage and whether the defendant consented to the search. The parties seemed to assume that a seizure occurred. It was not until later that the government abandoned the reasonable suspicion argument and focused on the seizure issue. Consequently,

the record is unclear as to what delay, if any, there may have been in the ultimate delivery of the luggage. The record is clear that the bus had not left at the time the drugs were discovered because officers went onto the bus to remove Mr. Va Lerie's carry-on items after the search. It is unclear, however, how much time elapsed between the removal of the luggage from the luggage bin and the discovery of the drugs. It does appear that this time period was fairly brief. It is also unclear as to whether the bus was held by law enforcement to allow for the removal of the carry-on items or whether the scheduled departure had not yet occurred (assuming those facts are even relevant).

In sum, I concur. I believe that based upon our prior precedent, a seizure occurred. At some point, however, I believe our circuit should re-visit the issue of what constitutes a seizure in the context of a temporary removal and inspection of packages and luggage that have been sent or checked with common carriers.

RILEY, Circuit Judge, dissenting.

Our federal Constitution mandates "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; see United States v. Ameling, 328 F.3d 443, 447 (8th Cir. 2003) (Fourth Amendment applies to states through the Fourteenth Amendment). This appeal asks whether the Nebraska State Patrol's (NSP) removal of a commercial bus passenger's checked luggage from the bus's lower luggage compartment to a room inside the bus terminal constituted an unreasonable seizure in violation of the Fourth Amendment. Because Eighth Circuit precedent in this area has evolved into different lines of authority, and because I would not follow the line chosen by the majority, I respectfully dissent. Based on my analysis of this circuit's precedent, I would hold law enforcement's temporary removal of a commercial bus passenger's checked luggage from a lower luggage compartment to a room inside the terminal does not constitute a seizure if the removal of the luggage

does not delay the passenger's travel, affect the timely delivery of the checked luggage, or interfere with the carrier's normal processing of the checked luggage. I also join Judge Melloy's plea to our circuit to "re-visit the issue of what constitutes a seizure in the context of a temporary removal and inspection of packages and luggage that have been sent or checked with common carriers."

This panel has no authority to overrule a prior panel's decision; only the court sitting en banc can take such action. Netland v. Hess & Clark, Inc., 284 F.3d 895, 899 (8th Cir. 2002). However, when a panel is confronted with varying lines of cases, the panel is "free to chose which line of cases to follow." Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1228 n.8 (8th Cir. 1995).

Our circuit's precedent on what constitutes a seizure in cases involving checked luggage or mailed packages is not a model of clarity. Compare United States v. Gomez, 312 F.3d 920, 923-24 (8th Cir. 2002) (holding no seizure occurred when a drug interdiction officer at a U.S. Postal Service facility moved a package to a command center twenty yards from a conveyor belt in a sorting area), United States v. Vasquez, 213 F.3d 425, 426 (8th Cir. 2000) (holding no seizure occurred when drug interdiction officers at a Federal Express facility subjected a package to a drug-sniffing dog), United States v. Harvey, 961 F.2d 1361, 1363-64 (8th Cir. 1992) (holding no seizure occurred when police removed luggage from a bus's overhead luggage compartment to subject the luggage to a drug-sniffing dog), and United States v. Riley, 927 F.2d 1045, 1048 n.4 (8th Cir. 1991) (implying no seizure occurred when police subjected an airline passenger's checked luggage to a drug-sniffing dog), with United States v. Morones, 355 F.3d 1108, 1111 (8th Cir. 2004) (holding seizure occurred when a law enforcement officer at a Federal Express facility removed a package from a conveyor belt to subject the package to a drug-sniffing dog), and United States v. Demoss, 279 F.3d 632, 636 (8th Cir. 2002) (same). Following the principles enunciated in Harvey, Vasquez and Gomez, I conclude the

removal of Va Lerie's checked luggage from the bus's lower luggage compartment to a room inside the terminal was not a seizure under the Fourth Amendment.

The Fourth Amendment protects against both unreasonable searches and unreasonable seizures. The Supreme Court has stated "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). The Court declared "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." Id. The Court recognized seizure relates to freedom of movement: "While the concept of a 'seizure' of property is not much discussed in our cases, this definition follows from our oft-repeated definition of the 'seizure' of a person within the meaning of the Fourth Amendment–meaningful interference, however brief, with an individual's freedom of movement." Id. n.5.

This is not a search case; this is a seizure case. And this is not a seizure case involving luggage physically possessed by a commercial bus passenger. See United States v. Place, 462 U.S. 696, 708 (1983) (recognizing detention of luggage within passenger's immediate possession intrudes on passenger's freedom of movement, in addition to the luggage's freedom of movement, such that the passenger's travel plans may be disrupted). This case involves checked luggage, which a passenger cannot claim until the luggage reaches its destination.[8]

---

[8]A casual observer might cite Florida v. Royer, 460 U.S. 491, 507 (1983), to support the district court's decision in this case. A plurality in Royer held an airline passenger had been detained in violation of the Fourth Amendment. In Royer, 460 U.S. at 493, law enforcement officers became suspicious of an airline passenger who fit a drug courier profile. The officers approached the passenger in the airport terminal after the passenger had checked his luggage and headed for his boarding area. Ultimately, the officers and the passenger ended up in a private room off the concourse. The officers also retrieved the passenger's luggage from the airline and brought the luggage to the room. When asked whether the officers could search the

To understand the state of Eighth Circuit precedent in Fourth Amendment seizure cases, I will discuss a few cases which, to me, announce different standards, reach inconsistent results, and create a division in our circuit authority. In <u>United States v. Harvey</u>, 961 F.2d 1361, 1362 (8th Cir. 1992), police officers and a drug-

luggage, the passenger produced a key and unlocked one piece of luggage. A fractured Supreme Court asked whether a state court properly applied Fourth Amendment principles in holding the airline passenger "was being illegally detained at the time of his purported consent to a search of his luggage." <u>Id.</u> While five justices held the passenger had been detained in violation of his Fourth Amendment rights, only three justices (Justices White, Marshall and Stevens) mentioned the possibility that an illegal seizure of the passenger's luggage had occurred. <u>Id.</u> at 503 (stating the officers had the passenger and his seized luggage in the private room). These justices did not discuss the seizure issue or their analysis in concluding the luggage had been seized. Instead, these justices simply stated the luggage had been seized. Justice Powell, who cast the critical fifth vote, wrote a separate concurrence in which he focused on the passenger, not the luggage. In doing so, he referenced how the officers, when they met with the passenger in the private room, "already had obtained possession of his checked luggage." <u>Id.</u> at 508 (Powell, J., concurring). Justice Brennan, who wrote a separate concurrence, did not discuss whether the luggage had been seized, but rather wrote the passenger had been seized illegally when the officers first stopped the passenger. <u>Id.</u> at 511 (Brennan, J., concurring). Justice Blackmun, who wrote a separate dissent concluding the passenger's Fourth Amendment rights had not been violated, wrote "[t]he officers acted reasonably in taking [the passenger]'s baggage stubs and bringing his luggage to the police room without his consent." <u>Id.</u> at 518 n.3 (Blackmun, J., dissenting). Finally, Justice Rehnquist, with whom Chief Justice Burger and Justice O'Connor joined, wrote a separate dissent concluding the officers' conduct was reasonable and the passenger's Fourth Amendment rights had not been violated. <u>Id.</u> at 519-32 (Rehnquist, J., dissenting). At no point did Justice Rehnquist intimate the officers seized the passenger's luggage when they retrieved the luggage from the airline. Understanding our seizure precedent is a formidable task by itself. Trying to understand and apply the Supreme Court's decision in <u>Royer</u> is even more daunting. Suffice it to say, a majority of justices in <u>Royer</u> did not agree on–and certainly did not articulate–a standard to be applied in Fourth Amendment seizure cases involving checked luggage. Therefore, I cannot rely on <u>Royer</u>, but relegate <u>Royer</u> to this footnote.

sniffing dog, on a mission to find illegal drugs, boarded a Greyhound bus after it stopped for cleaning and refueling. The dog alerted to an overhead luggage compartment. The officers removed some luggage from the overhead compartment, and the dog alerted to two bags. The officers returned the bags to the overhead compartment and exited the bus. After the passengers re-boarded the bus, the officers asked who owned the bags to which the dog had alerted. When two passengers acknowledged they owned the bags, the officers asked them to take their bags off the bus and wait for the officers. Confronted with the question whether the removal of the bags from the overhead compartment constituted an unlawful seizure, we held it did not. Id. at 1363. Our court held "there was no meaningful interference with [the passengers]' possessory interests in their baggage," because "the temporary removal of the bags caused no delay to [their] travel."[9] Id. at 1364.

In United States v. Vasquez, 213 F.3d 425, 426 (8th Cir. 2000), drug interdiction officers examined packages at a Federal Express sorting station. When the officers' suspicions about a certain package became aroused, the officers used a drug-sniffing dog to sniff the package. After the dog alerted to the package, the officers detained the package, and later obtained a search warrant. Asking whether the officers seized the package, our court held "the officers' actions in examining the outside of the package and then subjecting the package to a dog sniff as it sat at the rear of the delivery truck do not constitute a detention requiring a reasonable, articulable suspicion because, at that point, the officers had not delayed or otherwise interfered with the normal processing of the package." Id. In reaching this

_____

[9] Our decision in Harvey was later cited by a federal district court in Kansas. In United States v. Wood, 6 F. Supp. 2d 1213, 1224 (D. Kan. 1998) (citing Harvey, 961 F.2d at 1363-64), the district court relied on Harvey in pronouncing "a seizure [does not] occur when baggage is temporarily removed from one public area to another without causing any delay in travel plans." The court held the only possessory interest a mailer of a package has is a "contract-based expectancy that the package would be delivered to the designated address" at the expected time. Id. (quoting United States v. LaFrance, 879 F.2d 1, 7 (1st Cir. 1989)).

-19-

conclusion, the court relied on Harvey and United States v. Ward, 144 F.3d 1024 (7th Cir. 1998). Having already discussed Harvey, I will discuss the Seventh Circuit's decision in Ward.

In Ward, 144 F.3d at 1027, an individual checked a bag with a Greyhound luggage handler, who placed the bag in the luggage compartment accessible only from the outside. The bag's owner did not board the bus, but instead flew to the bus's destination to await the bus and claim the bag. When the bus stopped for a passenger meal break, drug enforcement officers questioned some bus passengers. When an officer's investigation led him to the outside luggage compartment, he noticed a suspicious bag. When no passenger claimed ownership of the bag, the officer removed the bag from the bus to subject the bag to a drug-sniffing dog. Before a dog could arrive at the bus station, the bus left without the detained bag. When a dog finally arrived, it alerted to the bag. Once a search warrant was obtained, the officer searched the bag and discovered a kilogram of cocaine and a semi-automatic handgun loaded with hollow-point bullets. Drug enforcement officers then set up a sting at the bus's final destination, and caught the bag's owner as he attempted to claim his bag.

Did the drug enforcement officers violate the bag owner's Fourth Amendment rights by unlawfully seizing his bag? The Seventh Circuit held they did not. Id. at 1032-34. The bag's owner argued the officers were constitutionally authorized only to handle the bag and remove it from the compartment. The Seventh Circuit disagreed, and recognized the defendant "could reasonably have foreseen that the bag would be handled, moved around, and even taken off the bus, whether at intermediate stops when the driver might need to remove the bag to sort and/or gain access to other luggage, or at a hub like St. Louis where the bag would have been transferred to another bus. He could have no reasonable expectation, in other words, that the bag would not be touched, handled, or even removed from the bus prior to the bag's arrival" at its destination. Id. at 1032. Thus, the court held the detention of the bag would have been a seizure only when it "interfer[ed] with [the defendant]'s

contractually-based expectation that he would regain possession of the bag at a particular time." Id. at 1033.

In United States v. Demoss, 279 F.3d 632, 634 (8th Cir. 2002), a law enforcement officer was working drug interdiction at a Federal Express facility when he noticed a suspicious package. The officer removed the package from a conveyor belt, and then noticed some indicators the package contained drugs. The officer took the package to another room in the facility and subjected the package to a dog sniff. Based on these facts, the court asked when a Fourth Amendment seizure occurred. The court concluded no seizure occurred when the officer removed the package from the conveyor belt. Id. at 635. However, the court held the package was seized when the officer "moved the package away from the conveyor belt and detained the package for a canine sniff," because the officer "exert[ed] dominion and control over the package." Id. at 636 (quoting Jacobsen, 466 U.S. at 121 n.18) (alteration in original). Notwithstanding the seizure holding, the court held the seizure was not unreasonable because the officer had reasonable suspicion to detain the package. Id. at 636-37.

The court's ultimate holding garnered the concurrence of Judge Hansen, who wrote separately to state his belief "that no seizure occurred in this case until [the officer] infringed upon [the defendant]'s interest in the timely delivery of the package." Id. at 637 (Hansen, J., concurring). In reaching this conclusion, Judge Hansen discussed Harvey, Vasquez and Ward, focusing his Fourth Amendment seizure analysis on whether a package's "ultimate contracted for timely delivery [is] frustrated." Id. at 640. Judge Hansen also impliedly recognized our seizure jurisprudence has not been settled: "I choose to cast my lot with those cases both from this and other circuits indicating that a piece of luggage or mail delivered to a common carrier is not 'seized' within the meaning of the Fourth Amendment until the authorities have interfered with a possessory interest in the luggage or mail such that the expectation of timely delivery of the package or luggage has been frustrated." Id.

-21-

Ten months after our court decided <u>Demoss</u>, we decided <u>United States v. Gomez</u>, 312 F.3d 920, 923 (8th Cir. 2002), in which we said removing a package at a post office from a conveyor belt to a position twenty yards away "was minimal interference with [the mailer]'s possessory interest in the package." We further stated, "When the package was taken to the command post, away from the normal activity near the conveyor belt but still within the confines of the processing center, it was merely 'stopped,' and reasonable suspicion was not required for that stop." <u>Id.</u> at 923-24. Specifically distinguishing <u>Demoss</u>, the court ultimately held the package "was not seized until [the officer] opted not to return it to the conveyor belt for transfer to its intended destination, that is, until he 'exert[ed] dominion and control over the package for [his] own purposes.'" <u>Id.</u> at 924 (quoting <u>Jacobsen</u>, 466 U.S. at 121 n.18) (alteration in original).

Finally, our court again addressed a seizure issue earlier this year. In <u>United States v. Morones</u>, 355 F.3d 1108, 1110 (8th Cir. 2004), a police officer was inspecting packages at a Federal Express facility when he removed a package from a conveyor belt, set it aside, and retrieved a drug-sniffing dog, which alerted to the package. Our court held the officer "exercised 'meaningful interference' with [the mailer]'s 'possessory interests' in the package–that is, he seized it–when he removed it from the mail stream and held it for the dog sniff." <u>Id.</u> at 1111.

If anything is clear, it is that our seizure cases involving checked luggage and mailed packages are not.

The doctrine of stare decisis, which means to stand by things decided, "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." <u>Payne v. Tennessee</u>, 501 U.S. 808, 827 (1991). The Supreme Court has recognized "the important doctrine of stare decisis . . . ensure[s] that the law will not merely change erratically, but will develop in a

principled and intelligible fashion." Vasquez v. Hillery, 474 U.S. 254, 265 (1986). The Court also has acknowledged stare decisis "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact." Id. at 265-66.

It is absolutely critical that citizens and law enforcement understand what the Fourth Amendment protects. Unfortunately, our decisions in the Fourth Amendment seizure area do not clearly enunciate and faithfully apply a consistent standard. Our court should uniformly resolve Fourth Amendment seizure cases to help our citizens understand the freedoms guaranteed by their Constitution. Consistent resolution of these cases also will ensure law enforcement fulfills its solemn duties in a constitutional manner. Although any debate over the scope of the Seizure Clause of the Fourth Amendment necessarily and rightly concentrates on the rights of our citizens, there should be little debate that law enforcement officers must understand what conduct the Fourth Amendment authorizes and what conduct it condemns.

Efforts to rid our society of illegal drugs are indeed solemn tasks: "The public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit. Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances. Much of the drug traffic is highly organized and conducted by sophisticated criminal syndicates. The profits are enormous. And many drugs . . . may be easily concealed. As a result, the obstacles to detection of illegal conduct may be unmatched in any other area of law enforcement." United States v. Mendenhall, 446 U.S. 544, 561-62 (1980) (Powell, J., concurring). I urge the court to speak with one voice about the appropriate standard for Fourth Amendment seizure cases.

When studying our circuit's seizure cases, do our holdings depend on how far law enforcement officers move a package or piece of luggage? Do we focus on the commercial traveler's expectations? Do we fully discuss what possessory interests a commercial traveler has in his checked luggage? One principle which is beyond reproach is commercial travelers expect their luggage to be handled. Of course, if their luggage were not handled, it could hardly reach its destination. It would seem obvious that, once a traveler checks his luggage, he gives up his immediate possessory interests in that luggage until he claims his luggage at its destination. During his travel, he must expect his luggage to endure a fair amount of handling, including the removal of his luggage from the luggage compartment. For instance, a commercial passenger's luggage may be damaged in transit and require removal from the luggage compartment. If a bus breaks down, a passenger should expect his luggage to be removed from the luggage compartment and either transferred to another bus or taken inside the bus terminal. When a bus reaches its destination, every passenger expects–or at least hopes–his luggage survived the trip and will be removed from the bus and taken to the luggage claim area. Thus, I conclude the Fourth Amendment does not frown on law enforcement handling luggage checked by a commercial bus passenger to the same degree as a reasonable traveler would expect the bus company's employees to handle the luggage, as long as any interference does not delay the traveler or frustrate his expectations of timely delivery at the luggage's destination.

If painting on a blank canvas, Judge Melloy would hold "a brief detention of a piece of [checked] luggage that does not result in the delay of either the passenger, or ultimate delivery of the luggage, is not a seizure." I agree with this standard, as have other circuits. See, e.g., Ward, 144 F.3d at 1031-32; United States v. Johnson, 990 F.2d 1129, 1132 (9th Cir. 1992); United States v. Lovell, 849 F.2d 910, 916 (5th

-24-

Cir. 1988). As discussed above, I also believe some of our cases already have announced–and even applied–this standard.

The NSP's handling of Va Lerie's luggage did not constitute a seizure under the Fourth Amendment, because the handling did not amount to a meaningful interference with Va Lerie's possessory interest in his luggage nor impact Va Lerie's freedom of movement. When the NSP removed Va Lerie's checked luggage from the bus's lower luggage compartment to a room inside the terminal and asked Va Lerie to consent to a search of his luggage, Va Lerie's travel was not delayed. While Va Lerie reasonably should have expected his checked luggage would be handled by Greyhound employees, Va Lerie's possessory interest in his checked luggage certainly did not include an expectation that Greyhound–or others at Greyhound's request–would not remove the luggage from the lower luggage compartment. The NSP removed Va Lerie's checked luggage from the lower luggage compartment to a room inside the terminal at Greyhound's request, and the NSP never took custody of the luggage from Greyhound. Had the NSP ignored Greyhound's request to remove the luggage from the lower luggage compartment to a room inside the terminal and asked Va Lerie for consent to search while standing by the bus, I cannot imagine this court holding an unlawful seizure occurred. By handling the luggage in a way requested by Greyhound and consistent with Va Lerie's expectations as to how his luggage would be handled, I cannot comprehend how this constitutes a meaningful interference with Va Lerie's possessory interest in his luggage. Applying the proper Fourth Amendment seizure principles to this case, I conclude an unreasonable seizure did not occur when the NSP removed Va Lerie's checked

luggage from the lower luggage compartment to a room inside the terminal to ask Va Lerie for consent to search the luggage.[10]

_____

_____

[10]Two other issues lurk beneath the surface in this case. First, do Fourth Amendment seizure principles change depending on whether we confront checked luggage at the airline terminal or checked luggage at the bus terminal? Second, do domestic and worldwide terrorist events involving commercial transportation impact our Fourth Amendment seizure analysis involving checked luggage? The district court made a cursory pass at these issues. Specifically, the district court discussed the impact the tragic events of September 11, 2001, have on commercial travel in America and on Fourth Amendment seizure jurisprudence. The district court stated "[p]assengers on a bus–unlike airline passengers–still retain some expectation of privacy in their baggage that the court is required to protect," and also opined "train passengers–and presumably bus passengers as well–have not yet had to surrender all subjective expectations of privacy in their personal luggage." United States v. Va Lerie, No. 8:03CR23, 2003 WL 21956437, *2-3 (D. Neb. Aug. 14, 2003). However, the district court also recognized we live in a dramatically altered world since our Nation was attacked on September 11: "Based on the national security measures introduced following the events of 9/11, air travelers can no longer have a subjective expectation of privacy in luggage or personal property. However, national security concerns with bus and train travel are somewhat less pressing than those with air travel. . . . Because the mandatory search provisions for luggage and packages put on airplanes do not apply to trains or buses, train or bus travelers can at least argue that they have a subjective expectation of privacy in their personal property, subject to the many qualifications already imposed by Fourth Amendment case law. But whether a post-9/11 society would recognize any mass transit traveler's subjective expectation of privacy as objectively reasonable is, obviously, another matter." Id. at *3 n.1 (citations omitted). Ultimately, the district court concluded that, "until Congress or the Eighth Circuit decides differently, a bus passenger's subjective expectation of privacy, however limited, is one that society is prepared to recognize as reasonable." Id. at *3. Since the district court penned these words, we have witnessed terrorist bombings of trains in Madrid, Spain, numerous bus bombings in Israel, and bombings in other nations.

The district court raises issues vitally important to this Nation. However, I do not need to address these issues at this time in this case, because Fourth Amendment seizure principles dictate Va Lerie's checked luggage was not seized when it was removed from the bus to a room inside the terminal.